W.H.V., INC., Appellant,

v.

## ASSOCIATES HOUSING FINANCE, LLC, Appellee.

No. 05–99–02153–CV.

Court of Appeals of Texas, Dallas.

March 29, 2001.

---

John Stooksberry, Boyd-Veigel, P.C., McKinney, for Appellant.

Mark Stromberg, Shields, Britton & Fraser, Dallas, for Appellee.

Before Justices JAMES, WRIGHT, and MARTIN RICHTER.

## OPINION

Opinion by Justice MARTIN RICHTER.

In this declaratory judgment suit, we must determine how a lienholder perfects a lien against a mobile home. W.H.V., Inc. ("WHV") appeals the trial court's determination that its recorded real estate lien is inferior to Associates Housing Finance, LLC's ("Associates") registered purchase money lien. In two issues, WHV contends the trial court erred in not granting its

motion for summary judgment and in granting Associates' motion for summary judgment. We conclude that because Associates registered its lien in accordance with the Texas Manufactured Housing Standards Act, and WHV did not, Associates' lien is superior in right to the lien claimed by WHV. Therefore, the trial court did not err in resolving the parties' motions for summary judgment.

### Factual and Procedural Background

The following summary judgment facts are undisputed.[1] In November 1993, Renita Deaver purchased certain real estate in Collin County (the "property"), and she financed a portion of the purchase price by executing a promissory note (the "note"). The note was secured by a vendor's lien and deed of trust on the property, which was properly recorded in the Collin County real estate records on December 3, 1993. Through assignment, WHV later acquired the note and deed of trust. In March 1994, Ira and Renita Deaver purchased a 1994 double-wide, Redman model 4059 manufactured home (the "mobile home") from a dealer, and as part of the purchase executed a Manufactured Home Retail Installment Contract/Security Agreement (the "contract"). Through assignment and merger, Associates acquired the dealer contract and security interests.

The mobile home was delivered to the Deavers in April 1994, and the dealer installed it on the property in accordance with the minimum governmental standards. On May 18, 1994, the State of Texas issued an original certificate of ownership for the mobile home, which acknowledged the recordation of the dealer's purchase money lien with the State. Between July 1 and December 31, 1994, the Deavers made significant improvements to and around the mobile home, including adding a three-car garage on one side, attaching a covered patio, and installing extensive decking on two other sides.

The Deavers, while owners of the mobile home and property, did not seek to cancel the certificate of ownership and obtain a certificate of attachment. Neither WHV nor its predecessors-in-interest attempted to file a lien specifically against the mobile home. In June 1997, Ira and Renita Deaver divorced, and the divorce decree awarded Ira Deaver all interest in the property.

The note went into default and, on February 3, 1998, WHV purchased the property at a nonjudicial foreclosure sale conducted according to the terms of the deed of trust. The Deavers also defaulted on the contract held by Associates. In July 1998, Associates filed suit against the Deavers seeking a judgment for the unpaid balance on the contract plus interest and an order either giving it possession of the mobile home or directing a sale foreclosing its security interest.

In September 1998, WHV intervened seeking a declaratory judgment concerning its alleged interest in the mobile home. WHV claimed the mobile home had become permanently affixed to the property prior to January 1, 1996, that the mobile home lost its character as personalty, and that WHV's deed of trust lien on the property had attached to the mobile home. WHV sought an order declaring its alleged

---

1. Both parties objected on various "form" grounds to the affidavits and certain documents. However, a review of the record reveals no rulings on these objections by the trial court; thus, the objections are waived. See Giese v. NCNB Tex. Forney Banking Ctr., 881 S.W.2d 776, 782 (Tex.App.—Dallas 1994, no writ). Further, neither party has objected or otherwise argued in its briefs to this Court regarding the substance of the adduced evidence. Therefore, all summary judgment proof in the record may properly be considered by this Court.

lien superior to Associates' lien, canceling the certificate of ownership, authorizing the State to issue a certificate of attachment, and awarding attorneys' fees. Associates cross-claimed against WHV for a declaration that its lien survived WHV's foreclosure and remains superior to the lien claimed by WHV and for attorneys' fees.

The trial court resolved the lien issues through the parties' rule 166a(c) cross-motions for summary judgment, denying WHV's requested declaratory relief and granting Associates' requested declaratory relief. The final judgment declared, in part:

> that the lien of [Associates] in the subject mobile home was, is, and presently remains valid and subsisting, that [Associates'] lien against the manufactured home has not been eradicated or vitiated, and that [Associates'] lien against the manufactured home is prior and superior to the claimed right, title or interest by [WHV].

This appeal ensued.[2]

### Standard of Review

■ The standard for reviewing a summary judgment is well established: (1) the movant for summary judgment has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant must be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *See Nixon v. Mr. Prop. Mgmt. Co.,*

690 S.W.2d 546, 548–49 (Tex.1985). The provisions of rule 166a of the rules of civil procedure are similarly applicable to either plaintiffs or defendants moving for summary judgment. *Gibbs v. Gen. Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). To prevail on a rule 166a(c) summary judgment, a plaintiff must conclusively establish all elements of its cause of action as a matter of law. *Nationwide Prop. & Cas. Ins. Co. v. McFarland,* 887 S.W.2d 487, 490 (Tex.App.—Dallas 1994, writ denied). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982). We review a summary judgment *de novo* to determine whether a party's right to prevail is established as a matter of law. *Howard v. INA County Mut. Ins. Co.,* 933 S.W.2d 212, 216–17 (Tex.App.—Dallas 1996, writ denied). When a plaintiff shows its entitlement to summary judgment, the nonmovant defendant seeking to avoid summary judgment must present evidence adequate to raise a fact issue. *Brooks v. Sherry Lane Nat'l Bank,* 788 S.W.2d 874, 876 (Tex.App.—Dallas 1990, no writ).

■ When both parties move for summary judgment pursuant to rule 166a(c), each party must carry its own burden and neither can prevail due to the other's failure to meet its burden. *Farmers Tex. County Mut. Ins. Co. v. Griffin,* 868 S.W.2d 861, 863 (Tex.App.—Dallas 1993, writ denied). When both parties file a motion for summary judgment and one is granted and one is denied, "the reviewing court should review the summary judg-

---

2. Prior to judgment, Associates nonsuited its claims against Renita Deaver. In addition to the declaration sought, the final judgment also granted Associates' breach of contract claims against Ira Deaver, but he did not appeal that judgment. Accordingly, the Deavers are not parties to this appeal, and the only issue before us involves the priority of the asserted liens.

ment evidence presented by both sides and determine all questions presented and render such judgment as the trial court should have rendered." *Comm'rs Court v. Agan,* 940 S.W.2d 77, 81 (Tex.1997); *see Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). Thus, on appeal, this Court considers all evidence accompanying both motions in determining which movant should prevail. *Griffin,* 868 S.W.2d at 863.

## Contentions of the Parties

In two points of error, WHV asserts the trial court erred when it granted Associates' motion for summary judgment on Associates' declaratory judgment counterclaim and when it denied WHV's motion for summary judgment. WHV asserts the evidence conclusively established the mobile home became permanently affixed to the property during its April 1994 installation or, at the latest, after the 1994 construction additions. As a result, WHV contends, the mobile home lost its character as personalty and became subject to WHV's 1993 recorded deed of trust lien. WHV argues that because Associates failed to make a fixture filing pursuant to the business and commerce code, Associates has no lien on the mobile home following WHV's foreclosure. WHV further asserts the Texas Manufactured Housing Standards Act [3] (the "MHSA") expressly protects prior lienholders like itself when a mobile home is permanently attached to real estate before the State issues its certificate of ownership. Finally, WHV contends certain 1995 legislative amendments to the property code "grandfathered" its lien rights to the mobile home because the mobile home was permanently affixed to the property prior to January 1, 1996.

Associates vigorously disputes that the mobile home was ever permanently affixed to the property. Regardless, Associates argues it was entitled to summary judgment because the MHSA supercedes all methods of perfecting a lien against a mobile home, whether statutory or common law. Associates asserts, therefore, that because its summary judgment evidence established it complied with the MHSA, and WHV failed to comply with the MHSA, Associates' lien is superior.

## Permanent Affixation to Real Estate

■ In its second point of error, WHV asserts the trial court erred in denying its motion for summary judgment. The foundation of WHV's motion is its contention the mobile home became a "fixture" or permanently attached to the property prior to January 1, 1996. Indeed, unless the mobile home has become part of the real estate, WHV has no lien against the mobile home.

■ The parties agree three factors are relevant to determining whether personalty has become a fixture: (1) the mode and sufficiency of annexation, either real or constructive; (2) adaption of the article to the use or purpose of the realty; and (3) the intention of the party who annexed the chattel to the realty. *Logan v. Mullis,* 686 S.W.2d 605, 607 (Tex.1985) (citing *O'Neil v. Quilter,* 111 Tex. 345, 348, 234 S.W. 528, 529 (1921)). Under this test, intention is the most important of the factors; however, even if intention is established as a matter of law, it will not prevail over undisputed physical facts to the contrary. *Id.; Ruby v. Cambridge Mut. Fire Ins. Co.,* 358 S.W.2d 943, 946 (Tex.Civ.App.—Dallas 1962, no writ). Another accepted test frequently employed to determine the existence of a fixture is whether the item can be removed without injury to the realty. *Ruby,* 358 S.W.2d at 945; *see also Crabb v. Keystone Pipe & Supply Co.,* 177

---

3. Tex.Rev.Civ.Stat.Ann. art. 5221f, §§ 1–20 (Vernon 1987 & Supp.2001).

S.W.2d 989, 991 (Tex.Civ.App.—Amarillo 1944, writ ref'd); *Melendez v. State*, 902 S.W.2d 132, 137–38 (Tex.App.—Houston [1st Dist.] 1995, no writ), *overruled on other grounds by State Farm Fire & Cas. Co. v. Morua*, 979 S.W.2d 616 (Tex.1998).

In support of its motion, WHV submitted the affidavit of Curtis Wilson, the contractor hired by the Deavers to make the 1994 improvements. Wilson averred that in July 1994, he was hired as both a consultant and a builder to help stabilize and brace the mobile home and to better affix it to the ground so it would become a safe and permanent home. This affidavit details the construction of the deck on the south and east ends of the mobile home and the patio and concrete work on the west end. Wilson further explained how the mobile home itself is attached to these additions, both by nails and through two "hip roof cut-backs." Wilson opined that the mobile home could not be moved without first destroying all the decking, all the concrete work around the house, and the awnings; further, the east and south roofs would have to be removed. Ultimately, Wilson stated that the mobile home cannot be moved without "material damages" to itself and the property, and in his opinion, the "mobile home is permanently affixed to the property." WHV also relied on an affidavit from Ira Deaver, the property and mobile home owner. Mr. Deaver averred that "no later than the first part of April 1994," the mobile home was "permanently installed" on the property. Mr. Deaver further testified that the mobile home was "permanently installed" before he received a duplicate copy of the certificate of ownership.

Associates' expert, Nathan Bell, testified by affidavit that he had examined the mobile home on three or four occasions. He stated the patio and porch added by the Deavers are connected to the mobile home only by shingles, plywood, and nails. Further, adjacent to the mobile home, but not under it, is a concrete slab with a three-car garage. Bell's affidavit concludes by opining "[i]n spite of these additions, the [mobile home] can be removed without causing 'material damages' to the property." To show the Deavers' intent not to annex the mobile home to the property, Associates also relied on a copy of the contract, wherein the Deavers promised as a condition of their loan not to allow the mobile home to become permanently attached to real estate.

Based on this conflicting evidence, we conclude a material fact issue exists regarding whether the mobile home ever became permanently attached to the property and, thus, whether WHV has a lien against the mobile home. Accordingly, the trial court did not err in denying WHV's motion for summary judgment. We overrule WHV's second point of error.

However, our conclusion is not dispositive of Associates' motion for summary judgment. Associates asserts it is entitled to summary judgment *regardless* of whether the mobile home was permanently attached to the property because Associates complied with the provisions of the MHSA and WHV did not. In addressing WHV's first point of error, we will assume *arguendo* WHV conclusively established the mobile home became permanently affixed to the property and WHV's real estate lien attached to the mobile home.

### The Texas Manufactured Housing Standards Act

In *Giese v. NCNB Texas Forney Banking Center*, 881 S.W.2d 776 (Tex.App.—Dallas 1994, no writ), we first analyzed the methods of lien perfection under the MHSA when a mobile home had become

permanently affixed to land.[4] We determined, in a case of first impression, that the MHSA governs perfection of security interests in mobile homes. *Id.* at 782; *see* TEX.BUS. & COM.CODE ANN. § 9.311(a)(2) & (b) (Vernon Supp.2001). Since that opinion issued, the legislature has amended the MHSA; however, these amendments do not substantively affect the sections applicable to this case. Nevertheless, because those sections have been renumbered, we briefly reiterate the basic title and lien perfection provisions of the MHSA.

The Texas Department of Housing and Community Affairs (the "Department") is charged with administering and enforcing the MHSA.[5] *See* TEX.REV.CIV.STAT.ANN. art. 5221f, §§ 3(7), (8) & 9(a) (Vernon Supp.2001). The Department is authorized to adopt rules regarding application and issuance of title documents relating to manufactured homes. *Id.* § 19(b). A mobile home is included in the definition of a manufactured home. *Id.* § 3(15) & (17). The Department issues title documents, which contain the dates of any liens and the names and addresses of any lienholders. *Id.* § 19(a)(2)(F). The MHSA defines "lien" as:

> [A] security interest that is created by any kind of lease, conditional sales contract, deed of trust, chattel mortgage, trust receipt, reservation of title, or other security agreement of whatever kind or character if an interest, other than an absolute title, is sought to be held or

given in a manufactured home, and any lien on a manufactured home that is created or given by the constitution or a statute.

*Id.* § 19(a)(6). A "security interest" is an interest in personal property or fixtures which secures payment or performance of an obligation. *Id.* § 19(a)(11); TEX.BUS. & COM.CODE ANN. § 1.201(37)(A) (Vernon Supp.2001). A "security agreement" is an agreement that creates or provides for a security interest. TEX.REV.CIV.STAT.ANN. art. 5221f, § 19(a)(12); TEX.BUS. & COM. CODE ANN. § 9.105(a)(12) (Vernon Supp. 2001).

A lien that has been registered and recorded with the Department is notice to all persons the lien on the manufactured home exists, and such liens have priority in the chronological order of recordation with the Department over all nontax liens or other claims against the manufactured home. TEX.REV.CIV.STAT.ANN. art. 5221f, § 19(m). Moreover, the Department, in adopting rules concerning titling of manufactured homes, "must protect a lienholder recorded on a certificate or document of title." *Id.* § 19(s).

The MHSA contemplates that a manufactured home may become permanently attached to real estate, and states, in pertinent part:

> If a manufactured home is permanently affixed to real estate, the manufacturer's certificate or the original document of title may be surrendered to the depart-

---

4. Neither party has cited us to another published Texas case construing the applicable title and lien perfection sections of the MHSA, nor has our research revealed any.

5. The Department of Housing and Community Affairs replaced the Department of Licensing and Regulation effective September 1, 1995 as the department responsible for regulating manufactured housing in Texas and enforcing the MHSA. *See* Act of June 16, 1995, 74th Leg., R.S., ch. 978, § 26, 1995

Tex. Gen. Laws 4894. Each certificate of the Department of Licensing and Regulation was carried forward as a certificate of the Department of Housing and Community Affairs. *Id.* § 27. The term "Department" in this opinion will refer collectively to both the Department of Housing and Community Affairs and the Department of Licensing and Regulation, when each acted in its capacity to administer and enforce the MHSA.

ment for cancellation.... *The depart-ment may not cancel a manufacturer's certificate or a document of title if a lien has been registered or recorded on the manufactured home.* ... Permanent attachment to real estate *does not affect* the validity of a lien recorded or registered with the department *before* the manufactured home is permanently attached. *The rights of a prior lien-holder pursuant to a security agreement or the provisions of a credit transaction and the rights of the state pursuant to a tax lien are preserved.* The department shall issue a certificate of attachment to real estate to the person who surrenders the manufacturer's certificate or document of title. The certificate or document must contain the legal description or the appropriate tract or parcel number of the real estate and the identification number of the home, and must certify that the manufacturer's certificate or original document of title has been canceled.

*Id.* § 19(*l* ) (emphasis supplied). In *Giese,* we held that by this language,

> the legislature intended ... two methods of perfecting a lien on a mobile home permanently attached to land: (1) a party can perfect her lien in the real property records *if* she surrenders and cancels her title document; or (2) if the party does not surrender and cancel her title, the party must note the lien on the certificate of title.

*Giese,* 881 S.W.2d at 781.

### Application of the Law to the Facts

 Although the facts differ somewhat, the question in *Giese* was the same as presently before us: whether a prior filed lien in the county real estate records was a prior perfected lien against a manufactured home. *See id.* In *Giese,* the appellant landowner purchased a manufactured home and permanently affixed it to her land. She then sold the land and home, financed the transaction for the purchaser, and the landowner recorded the deed of trust in the county real estate records; however, she never canceled the home's certificate of ownership with the Department. The purchasers obtained a loan from a bank, putting up the home as collateral. The bank filed a lien on the home with the Department. When the purchasers defaulted on both loan transactions, the landowner and bank both claimed the home as collateral. We concluded that by failing to comply with the MHSA, the landowner's prior-in-time real estate lien was inferior as a matter of law to the bank's MHSA lien. *Id.*

Our opinion in *Giese* controls the disposition of the instant case. The summary judgment evidence established the Deavers purchased the property and the mobile home, which allegedly they permanently affixed to the property. The dealer, Associates' predecessor-in-interest, registered its lien on the mobile home with the Department. However, neither the Deavers, nor WHV's predecessor-in-interest, nor WHV itself, followed the MHSA's provisions to cancel the certificate of ownership to the mobile home and obtain a certificate of attachment. Our holding in *Giese* would prevent the Deavers, through mere ownership of the property, from asserting a lien superior to Associates' lien. Similarly, the lien claimed by WHV as the Deaver's successor-in-interest to the property is inferior to Associates' lien registered with the Department.

 WHV argues that its nonjudicial foreclosure on the property "wiped out" Associates' lien because Associates failed to file a fixture lien pursuant to the

Texas Business and Commerce Code.[6] We disagree. The MHSA expressly supercedes and preempts "all laws, parts of laws, ordinances, rules or regulations which are in conflict with any of the provisions of this Act ... to the extent of such conflict." TEX.REV.CIV.STAT.ANN. art. 5221f, § 18(b). Additionally, the MHSA "supercedes any conflicting provisions of the Business & Commerce Code." *Id.* § 19(p). This preemption necessarily includes all conflicting laws regarding lien creation and perfection. As we held in *Giese*, the MHSA provides only two methods for perfecting a lien on a permanently attached mobile home: (1) recordation in the real property records *if* the mobile home owner surrenders and cancels the title document; or (2) noting the lien on the certificate of ownership issued by the Department. *Giese*, 881 S.W.2d at 781. It is undisputed WHV and its predecessors-in-interest failed to comply with either method. WHV's reliance on the common law of fixtures and the UCC fixture filing requirements is inapplicable because they conflict with the MHSA and, as such, are preempted.

Moreover, the MHSA assigns priority to liens "in the chronological order of recordation" with the Department. TEX.REV. CIV.STAT.ANN. art. 5221f, § 19(m). To prevail in this case, therefore, WHV's alleged lien must have been recorded or registered with the Department before Associates' lien. The summary judgment evidence established neither WHV nor its predecessors-in-interest recorded the claimed lien with the Department; therefore, Associates' registered lien is superior.

Alternatively, WHV argues its claimed prior-in-time lien is expressly protected by the MHSA. WHV relies on the following passage from Section 19(*l*):

Permanent attachment to real estate *does not affect* the validity of a lien recorded or registered with the department *before* the manufactured home is permanently attached. The rights of a prior lienholder pursuant to a security agreement or the provisions of a credit transaction ... are preserved.

*Id.* § 19(*l*) (emphasis supplied). WHV asserts that because its summary judgment evidence established that Associates' lien was registered with the Department *after* the mobile home was permanently attached to the property, the attachment *does affect* the validity of Associates' registered lien. WHV argues, therefore, that the MHSA expressly "preserve[s]" its first-in-time recorded real estate lien. We disagree.

The last quoted passage of the MHSA concerns perfection and priority of liens in the event manufactured housing later becomes attached to real estate. If, as WHV asserted, the mobile home became permanently attached to the property as a result of the July 1994 construction additions, this section preserves Associates', and not WHV's, lienholder rights. Associates' May 1994 registered lien would not be affected by the July 1994 permanent attachment of the mobile home to the property.

WHV, however, also presented evidence the mobile home was permanently attached to the property during installation "no later than the first part of April 1994," and before the May 1994 registering of Associates' lien. We do not construe the MHSA's preservation of "the rights of a prior lienholder" to encompass WHV. Even if the mobile home was permanently attached at installation, we read the MHSA to still require the cancellation of a

---

6. *See* TEX.BUS & COM.CODE ANN. §§ 9.313(a)(1), (2) & 9.402(e) (Vernon 1991 & Supp.2001).

title document to perfect WHV's asserted lien.

When a retailer acquires a manufactured home, the MHSA requires the creation of a manufacturer's certificate showing the original transfer of the manufactured home from the manufacturer to the retailer. *See* Tex.Rev.Civ.Stat.Ann. art. 5221f, § 19(a)(7). Upon the first retail sale, the retailer and purchaser must apply for a document of title and "the retailer shall surrender the original manufacturer's certificate." *Id.* § 19(c). Section 19(*l*), however, contemplates that if a manufactured home is permanently affixed to real estate, "the manufacturer's certificate *or* the original document of title may be surrendered to the department for cancellation." *Id.* § 19(*l*) (emphasis supplied). Then, the Department "shall issue a certificate of attachment to real estate to the person who surrenders the manufacturer's certificate or document of title." *Id.*

We conclude the MHSA contemplates two types of installations following the first retail sale: permanent and nonpermanent. If the home is permanently installed, there is no need to issue a certificate of ownership, so the retailer surrenders the manufacturer's certificate and the Department issues a certificate of attachment to real estate. If the installation is not permanent, the retailer surrenders the manufacturer's certificate and the Department issues a certificate of ownership, which will include notation of all registered liens. Therefore, regardless of when the mobile home became attached to the property, WHV or its predecessors-in-interest were required to cancel the title document and obtain a certificate of attachment to properly perfect its alleged lien against the

mobile home. Because neither WHV nor its predecessors-in-interest performed either requirement, Associates' lien is superior.

■ WHV, however, argues that the Texas Legislature changed the law after our opinion in *Giese* and "grandfathered" WHV's alleged rights in the mobile home. WHV points out that in 1995 the legislature, for the first time, classified all manufactured homes in this state. *See* Tex. Prop.Code Ann. § 2.001(a)-(d) (Vernon Supp.2001) (hereinafter "section 2.001"). Section 2.001 states that a manufactured home[7] is personalty *unless* (1) the home is permanently attached to real estate and (2) either the manufacturer's certificate or the document of title is surrendered for cancellation and a certificate of attachment is filed in the real property records in the county where the home is located. *Id.* § 2.001(b). The legislature also "grandfathered" the classification of older manufactured homes: "This section does not affect or change the classification of a manufactured home as personal or real property if the manufactured home was permanently affixed to real property before January 1, 1996." *Id.* § 2.001(d).

WHV asserts that because the mobile home falls within this grandfather provision, section 2.001 excuses WHV from obtaining the cancellation of either the manufacturer's certificate or document of title and issuance of a certificate of attachment to perfect its claimed lien against the mobile home. In essence, WHV argues section 2.001's grandfather clause preempts the lien sections of the MHSA. Again, we disagree.

By its express provisions, section 2.001 establishes the character of manufactured

---

**7.** A "manufactured home" in Section 2.001 is defined to have the same meaning as in the MHSA. *See* Tex.Prop Code Ann. § 2.001(c).

housing in this state; it does not purport to change, much less address, how liens against manufactured homes are perfected. We agree that because WHV alleges the mobile home was permanently affixed to the property prior to 1996, WHV was not limited to the method provided in section 2.001 for establishing the mobile home was real property. Otherwise, our earlier analysis of WHV's second point of error would be different. Again, however, resolution of Associates' right to summary judgment does not depend on the character of the mobile home but on whether WHV's claimed lien was perfected before Associates' lien. Because section 2.001 does not purport to address lien perfection, it is irrelevant to our disposition of this appeal.

■ We hold that a lienholder must comply with the Texas Manufactured Housing Standards Act to perfect a lien against a mobile home. The summary judgment evidence conclusively established: (1) Associates properly registered its lien with the Department; (2) Associates' lien was not released; (3) neither WHV nor its predecessors-in-interest registered its claimed lien with the Department; and (4) neither WHV nor its predecessors-in-interest cancelled the original document of title to the mobile home and acquired a certificate of attachment to real estate. Therefore, Associates established, as a matter of law, that its lien was superior to the lien claimed by WHV. We overrule WHV's first point of error.

We affirm the trial court's judgment.