Opinion issued December 23, 2004





     









In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00760-CV




APEX ENGINEERS AND CONSULTANTS, INC., Appellant

V.

WILLIAMS BROTHERS CONSTRUCTION COMPANY, Appellee




On Appeal from County Civil Court at Law No. 4
Harris County, Texas
Trial Court Cause No. 800206




MEMORANDUM OPINION

          In this breach of contract case, appellant, Apex Engineers and Consultants,
Inc., (“Apex”) challenges the summary judgment signed by the trial court in favor of
appellee, Williams Brothers Construction Company, Inc. (“Williams Brothers”). In
a single issue, with three supporting sub-issues, Apex contends that the trial court
erred in granting the summary judgment. 
          We affirm.
Factual and Procedural History
          Williams Brothers acted as general contractor on a highway project in Hidalgo
County under a contract with the Texas Department of Transportation (“TxDOT”). 
Williams Brothers subcontracted with Apex to supply and install polyethylene liner
for a portion of the project at a unit price of a $1.88 per square foot. The subcontract
provided that Apex would provide an estimated 15,570 square feet of liner at an
estimated cost of $29,271.60 ($1.88 x 15,570). A few days after the subcontract was
signed, the parties signed a “subcontract modification,” which served only to increase
the estimated quantity and approximate cost of the liner. The estimated amount of
liner that Apex was to supply under the modification was increased to 21,100 square
feet, which in turn changed the approximate total cost to $39,668 (21,100 x $1.88). 
          Apex ultimately supplied and installed 18,600 square feet of liner for the
highway project. Contending that it owed Apex only the amount of the liner actually
installed, Williams Brothers’s position was that the amount due Apex was $34,969
(18,600 x $1.88). Williams Brothers paid Apex $33,219.60 but initially withheld a
five percent retainage fee of $1,748.40. The withholding was based on a provision
in TxDOT’s standard specifications document, which provides for the withholding
of five percent of the amount owed to a contractor until the highway project’s
satisfactory completion. Both Williams Brothers’s general contract with TxDOT and
the Apex subcontract were subject to the TxDOT standard specifications.
          Apex sued Williams Brothers for breach of the subcontract, alleging that it was
owed $6,448.80. This amount represents the difference between the $33,219.60 paid
by William Brothers and the estimated total of $39,668 found in the subcontract
modification that was, in turn, based on the estimated liner quantity of 21,100 square
feet. Apex also prayed for attorney’s fees and costs.
          Williams Brothers moved for summary judgment, asserting that, under the
subcontract, it owed Apex only for the amount of liner actually installed multiplied
by the fixed per unit (i.e., square foot) price of $1.88. In support of its summary
judgment, Williams Brothers offered the subcontract and the subcontract
modification. Williams Brothers also submitted summary judgment evidence
supporting its contention that it was allowed to withhold the five percent retainage
fee, (i.e., $1,748.40), until completion of the project. Williams Brothers also
submitted the affidavit of its vice president, evidencing that Williams Brothers had
offered to pay Apex the retainage fee when Apex filed suit in exchange for the suit’s
dismissal, but that Apex declined to accept the offer. It is undisputed that TxDOT
paid Williams Brothers $1,748.40 in December 1993 and that Williams Brothers paid
Apex the retainage at the motion for summary judgment hearing in April 1994. Thus,
Williams Brothers contends that it has paid Apex all that is owed under the
subcontract.
          Apex filed a response to Williams Brothers’s motion for summary judgment
and a cross-motion for summary judgment. Apex contends that Williams Brothers
owes it, not for the amount of liner actually installed, but for the amount that
Williams Brothers “purchased”; that is, the estimated amount of 21,100 square feet
listed in the subcontract modification. Apex asserts that such interpretation is
required under the plain language of the subcontract. Apex did not contest that the
subcontract was subject to the TxDOT general specifications, which allowed
Williams Brothers to withhold the retainage. 
          In support of its response and cross-motion, Apex offered the affidavit of its
president, Charles Schibi. Williams Brothers filed an objection to Schibi’s affidavit,
which was sustained by the trial court. 
          The trial court granted Williams Brothers’s motion for summary judgment and
denied Apex’s cross-motion. The court signed a final summary judgment, providing
that Apex take nothing against Williams Brothers and dismissing Apex’s claims with
prejudice. Apex appeals the judgment, challenging the trial court’s ruling on the
respective motions for summary judgment.
 
Standard and Scope of Review
          A party moving for traditional summary judgment carries the burden of
establishing that no material fact issue exists and that it is entitled to judgment as a
matter of law. Tex. R. Civ. P. 166a(c); M.D. Anderson Hosp. & Tumor Inst. v.
Willrich, 28 S.W.3d 22, 23 (Tex. 2000). When cross-motions for summary judgment
are filed, a reviewing court examines all of the summary judgment evidence presented
by both sides, determines all questions presented, and if reversing, renders such
judgment as the trial court should have rendered. FM Props. Operating Co. v. City
of Austin, 22 S.W.3d 868, 872 (Tex. 2000); Bradley v. State ex rel. White, 990 S.W.2d
245, 247 (Tex. 1999). Each summary-judgment movant must carry its own burden
and neither can prevail due to the other’s failure to meet its burden. Guynes v.
Galveston County, 861 S.W.2d 861, 862 (Tex. 1993); W.H.V., Inc. v. Assocs. Hous.
Fin., LLC, 43 S.W.3d 83, 87 (Tex. App.—Dallas 2001, pet. denied).
Interpretation of the Subcontract’s Payment Terms
          Article 1.1 of the subcontract between Apex and Williams Brothers requires
Apex to pay for all labor, equipment, supervision, materials, supplies, insurance, and
any other incidental items necessary to complete the work on a turnkey basis. 
Originally, article 1.1 also provided that the “estimated quantity” of polyethylene
liner that Apex would supply and install for the project was 15,570 square feet at a
unit price of $1.88 per square foot, resulting in an “estimated total” price of 
$29,271.60. 
          Article 1.2 of the contract provides as follows:
All of the quantities shown above are approximate and [Apex] agrees to
accept the unit prices as described in Article 1.1. It is understood that
the unit price, and not the estimated total price contained herein, shall
control and be binding as the total payment due to [Apex] under the
SUBCONTRACT.

(Emphasis added.)
          Four days after signing the subcontract, the parties signed the subcontract
modification, which served only to modify the “estimated amount” of polyethylene
liner to be supplied and installed by Apex. Specifically, the modification provided
that the following “item of work” is deleted from the original subcontract: the
“estimated quantity” of 15,570 square feet of polyethylene liner. In the modification,
the following “item of work” is added: the “estimated quantity” of 21,100 square feet
of polyethylene liner for the same unit price of $1.88 per square foot. The
subcontract modification also stated, “The new approximate total of your
[subcontract] is now $39,668.” Lastly, the parties agreed that the modification
changed no other terms or conditions of the original subcontract; that is, the parties
agreed that “[t]he SUBCONTRACT shall remain in full force and effect as originally
signed” except as provided in the modification. Thus, the terms and conditions of
article 1.2 remained “in full force and effect” between the parties.
          In its first of three sub-issues, Apex contends that, as a matter of law, the
subcontract requires Williams Brothers to pay for the estimated amount of liner (i.e.,
21,100 square feet) listed in the subcontract modification. Apex summarizes its
argument as follows: “[Apex] contends that the contract controls, and it is
unambiguous that no matter the amount of material installed [Williams Brothers]
owes the agreed amount unit price, $1.88 per square foot[,] for the amount it
purchased, 21,100 square feet.” Apex asserts that it is of “significant note” that the
subcontract modification increased the amount of liner “purchased” from 15,570
square feet to 21,100. Apex also points out that the subcontract does not state that
Williams Brothers had to pay only for liner actually installed. 
          Conversely, Williams Brothers contends that the subcontract unambiguously
provides for payment based on the unit price multiplied by the liner actually installed. 
Williams Brothers points out that Apex agreed that the stated quantities and
corresponding total costs were estimates, not fixed. Williams Brothers also points out
that the only term that was expressly fixed in the subcontract was the unit price and
that article 1.2 expressly provides that “unit price, and not the estimated total price
contained herein, shall control and be binding as the total payment due.” 
          The law in regard to contract interpretation is clear and well-settled. The
interpretation of an unambiguous contract is a question of law, which is reviewed de
novo. MCI Telecomms. Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 650 (Tex.
1999); Standard Constructors, Inc. v. Chevron Chem. Co., 101 S.W.3d 619, 622
(Tex. App.—Houston [1st Dist.] 2003, pet. denied). Whether a contract is ambiguous
is also a question of law. See Columbia Gas Transmission Corp. v. New Ulm Gas,
Ltd., 940 S.W.2d 587, 589 (Tex. 1996). To determine whether a contract is
ambiguous, we look at the agreement as a whole in light of the circumstances present
when the parties entered into the contract. Nat’l Union Fire Ins. Co. v. CBI Indus.,
Inc., 907 S.W.2d 517, 520 (Tex. 1995); Standard Constructors, 101 S.W.3d at 622. 
We examine and consider the entire writing in an effort to harmonize and to give
effect to all the provisions of the contract so that none will be rendered meaningless. 
CBI Indus., Inc., 907 S.W.2d 520; Standard Constructors, 101 S.W.3d at 622. 
          Our primary concern in construing a written contract is to ascertain the true
intent of the parties as expressed in the instrument. Forbau v. Aetna Life Ins. Co.,
876 S.W.2d 132, 133 (Tex. 1994); Standard Constructors, 101 S.W.3d at 622. A
contract is unambiguous if, after appropriate rules of construction have been applied,
the contract can be given a definite or certain legal meaning. See Columbia Gas, 940
S.W.2d at 589. In contrast, if, after appropriate rules of construction have been
applied, a contract is susceptible of more than one reasonable interpretation, the
contract is ambiguous. Universal C.I.T. Credit Corp. v. Daniel, 243 S.W.2d 154,
157 (Tex. 1951). Mere disagreement over a contract’s interpretation does not
necessarily render the contract ambiguous. Columbia Gas, 940 S.W.2d at 589.
          Applying these rules of construction, we conclude that the subcontract is not
ambiguous in regard to the payment terms. There is only one reasonable
interpretation of the subcontract: the contract interpretation offered by Williams
Brothers that the amount owed Apex is determined by multiplying the unit price by
the quantity of liner actually installed. In contrast, Apex’s contract
interpretation—that Williams Brothers owes it for the estimated quantity of liner
listed in the subcontract modification—does not comport with the rules of contract
construction. Particularly, Apex’s reading violates the principles that contract
provisions must be read neither in isolation nor to render a provision meaningless.
          Reading the pertinent contract provisions reveals the following. The parties
agreed that the fixed unit price is $1.88 per square foot and that Apex would perform
the work on a turnkey basis. Pursuant to the subcontract modification, the parties also
expressly agreed that the stated quantities and total costs listed in article 1.1 were
“estimated” and “approximate.” If article 1.1 were read in isolation, ambiguity might
exist regarding the amount owed by Williams Brothers. But such reading is contrary
to well-established rules of construction, particularly the rule that the contract must
be read as a whole, rather than in isolation. 
          Article 1.2 expressly references article 1.1 and serves to clarify the payment
terms of the subcontract. That article makes clear that the quantity listed in article 1.1
is an “approximate,” not a set figure and that the estimated total price, which is
derived from the estimated quantity, does not determine the amount ultimately owed
to Apex. Article 1.2 serves to emphasize that the only definitive term stated in the
subcontract relative to the total payment ultimately due is the unit price. Thus, the
only reasonable interpretation of the subcontract is that the total payment due cannot
be determined until the liner has been installed.
          We overrule Apex’s first sub-issue.
Reliance on Schibi’s Affidavit
          In its second sub-issue, Apex contends that “[i]f the Court accepts [Williams
Brothers’s] interpretation of the written contract to the exclusion of [Apex’s] position,
then based upon . . . Mr. Schibi’s affidavit testimony . . . there is a fact issue regarding
the intent of the parties.” As stated, the trial court sustained Williams Brothers’s
objection to the Schibi affidavit. On appeal, Apex has not attacked the merits of that
ruling. Consequently, we cannot consider this affidavit. Inglish v. Prudential Ins.
Co., 928 S.W.2d 702, 706 (Tex. App.—Houston [1st Dist.] 1996, writ denied); Ash
v. Hack Branch Distributing Co., 54 S.W.3d 401, 409–10 (Tex. App.—Waco 2001,
pet. denied). Apex relies on no other summary judgment evidence in support of this
sub-issue.
          We overrule Apex’s second sub-issue.
Attorney’s Fees 
          In its third sub-issue, Apex complains that the trial court “erred in denying
[Apex] its attorney’s fees.” Under section 38.001 of the Civil Practice and Remedies
Code, a party is entitled to recover attorney’s fees in addition to the amount of a valid
claim based on a written contract. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8)
(Vernon 1997). Because Apex did not have a valid breach of contract claim against
Williams Brothers, as discussed above, Apex was not entitled to recover attorney’s
fees on its breach of contract claim.


 See Mustang Pipeline Co., Inc. v. Driver
Pipeline Co., 134 S.W.3d 195, 201 (Tex. 2004) (reversing trial court’s order of
section 38.001(8) attorney’s fees because no valid breach of contract claim existed);
see also Bates v. Tex. State Technical Coll., 983 S.W.2d 821, 827 (Tex. App.—Waco
1998, pet. denied) (recognizing that party must “prevail” on breach of contract claim
to be entitled to section 38.001(8) attorney’s fees and holding party not entitled to
attorney’s fees when he had not “prevailed” on breach of contract claim following
granting of summary judgment on that cause of action). 
 
          We overrule Apex’s third sub-issue.
Conclusion
          We hold that the trial court properly granted Williams Brothers’s motion for
summary judgment and denied Apex’s cross-motion. Accordingly, we affirm the
judgment of the trial court. 




                                                   Laura Carter Higley
                                                   Justice

Panel consists of Justices Nuchia, Hanks, and Higley.