COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





EDWARD ALEXANDER ROMO,

                            Appellant,

v.


DANNY PAYNE, COMMISSIONER OF
THE TEXAS DEPARTMENT OF
SAVINGS AND MORTGAGE
LENDING, AND THE STATE OF
TEXAS,

                            Appellees.

§
 
§
 
§
 
§
 
§
 
 §

  § 

 §


No. 08-08-00043-CV

Appeal from the

346th Judicial District Court

of El Paso County, Texas 

(TC# 2004-2258) 





O P I N I O N

            Edward Alexander Romo (“Romo”) appeals from a judgment enjoining certain conduct
and requiring him to pay restitution, civil penalties, and attorney’s fees for violating the Texas
Mortgage Broker License Act (the “Broker Act”) and the Texas Deceptive Trade Practices Act
(“DTPA”). We reverse in part and affirm in part.
            Romo is a licensed mortgage broker who operated several businesses in El Paso. Romo’s
businesses focused on obtaining refinancing for homeowners facing foreclosure. In May 2004,
the State of Texas and the Commissioner of the Texas Department of Savings and Mortgage
Lending (collectively “the State”) sued Romo, alleging that he violated the Broker Act and the
DTPA.
            The State moved for summary judgment. Among other things, the State asserted that
Romo employed Melisa Simpson as an unlicensed loan officer from September 2002 to May
2004 and that he employed Alin Blanchet as an unlicensed loan officer in 2004. As a result of
his employing Simpson, Romo received $82,785.28 in profits from January 2004 to April 2004. 
The State sought a judgment of up to three times this amount. The State also asserted that Romo
failed to notify the Commissioner of all of the business names and addresses that he used and
that he charged fees that were unreasonable in relation to the services he performed. Specifically,
the State contended that it was unreasonable for Romo to charge more than three-to-five percent
of the loan amount. The State sought a judgment for the amount of fees Romo charged in excess
of three percent, or alternatively five percent, of the loans he brokered from May 2002 through
June 2005. In addition, the State sought to enjoin Romo from employing unlicensed loan
officers, from operating under assumed names or at addresses not disclosed to the Commissioner,
and other injunctive relief. Finally, the State requested up to $20,000 for each DTPA violation
and an award of attorney’s fees.
            In his response to the State’s motion, Romo challenged the State’s summary judgment
evidence regarding the amount of his profits and he argued that his fees were reasonable. He
admitted that he was “delayed” in notifying the Commissioner of two of his business names, but
offered reasons to justify the delays. Romo further admitted that Simpson worked for him as an
unlicensed loan officer, but he asserted that she was not required to have a license. He claimed
that Blanchet was only a loan processor, not a loan officer. Romo also filed a summary judgment
motion, asserting, among other things, that the State had no evidence to support its claims that
Simpson was required to have a license or that he charged unreasonable fees.
            Ruling on the competing motions, the trial court determined that: (1) Romo violated the
Broker Act by failing to notify the Commissioner of the names and addresses of his businesses;
(2) Romo violated both the Broker Act and the DTPA by employing Simpson and Blanchet as
unlicensed loan officers; and (3) Romo earned $82,785 through his employment of Simpson. 
The court rejected the State’s other claims, including its claim that Romo charged unreasonable
fees. The court permanently enjoined Romo from: (1) conducting business as a mortgage broker
under any assumed name without first notifying the Commissioner of the name; (2) failing to
notify the Commissioner of any new business address; and (3) failing to obtain a license
certificate for any new address. The court ordered Romo to pay the following amounts: (1)
$82,785 as restitution to consumers who paid him fees as a result of his employment of Simpson;
(2) $7,500 as a civil penalty for violating the DTPA; and (3) $5,000 as attorney’s fees. 
            Romo raises seven issues on appeal. In his first issue, he argues that the State relied on
inadmissible hearsay to establish that he earned $82,785 by employing Simpson. In his second
issue, he argues that Simpson was not required to be licensed as a loan officer under the Broker
Act. In his third issue, he argues that the State failed to establish the requirements for permanent
injunctive relief. In his fourth issue, he argues that employing Simpson as an unlicensed loan
officer was not a DTPA violation because she was not required to be licensed under the Broker
Act. In his fifth issue, he argues that the State failed to establish the requirements for a civil
penalty under the DTPA. In his sixth issue, he argues that Blanchet was a loan processor, rather
than a loan officer. And in his seventh issue, he argues that the State was not entitled to recover
attorney’s fees.
            We review a summary judgment de novo to determine whether the movant carried the
burden of showing that there is no genuine issue of material fact and that judgment should be
granted as a matter of law. New Wave Techs., Inc. v. Legacy Bank of Texas, 281 S.W.3d 99, 100
(Tex.App.--El Paso 2008, pet. denied). We must accept as true all evidence favorable to the
nonmovant, indulging every reasonable inference and resolving all doubts in the nonmovant’s
favor. W.L. Pickens Grandchildren’s Joint Venture v. DOH Oil Co., 281 S.W.3d 116, 119
(Tex.App.--El Paso 2008, pet. denied). When both parties move for summary judgment and the
trial court grants one motion and denies the other, we consider the summary judgment evidence
presented by both sides and determine all the questions presented. Id.
            The central issue in this case is whether the Broker Act required loan officers to be
licensed between the years of 2002 and 2004, which is when Romo employed Simpson and
Blanchet. If licenses were not required, Romo could not have violated the Broker Act by
allowing Simpson to work as a loan officer and there would be no basis for requiring him to
disgorge the $82,785 that he earned by reason of her employment, irrespective of whether the
State’s evidence was inadmissible. Likewise, if licenses were not required, it does not matter
whether Blanchet acted as a loan processor or a loan officer. And if Romo did not violate the
Broker Act by employing unlicensed loan officers, he also did not violate the DTPA, since the
DTPA violation was premised on the conclusion that the Broker Act required licensing. Without
the DTPA violation, the $7,500 civil penalty cannot stand, regardless of whether the
requirements for imposing a civil penalty were satisfied. Accordingly, rather than consider the
issues in the format that they were briefed by Romo, we will first address whether the Broker Act
required loan officers to be licensed.
            The Broker Act is part of the Texas Finance Code. See Tex.Fin.Code Ann. §§ 156.001-.508 (West 2006 & Supp. 2010). It was enacted in 1999 and has been amended several times. 
There are no cases construing its scope. Our analysis will therefore center on the statutory
language and the canons of construction.
            When construing statutes, our main goal is to give effect to the Legislature’s intent. In re 
S.S.A., 319 S.W.3d 796, 798 (Tex.App.--El Paso 2010, no pet.). We may consider the object
sought to be attained, the circumstances under which the statute was enacted, the legislative
history, and the administrative construction of the statute. Tex.Gov’t Code Ann. § 311.023
(West 2005). The public interest is favored over private interests. Id. at § 311.021(5). But our
polestar is the statutory language itself. “Where text is clear, text is determinative of [legislative]
intent.” Entergy Gulf States, Inc. v. Summers, 282 S.W.3d 433, 437 (Tex. 2009)(op. on reh’g). 
We read the language in context, not in isolation, and we presume that the entire statute is
intended to be effective and that every word, phrase, and expression was deliberately chosen. In
re S.S.A., 319 S.W.3d at 798-99; see also Tex.Gov’t Code Ann. § 311.021(2). We will not
depart from the plain meaning unless enforcing the statute as written would produce absurd
results. See In re S.S.A., 319 S.W.3d at 798.
            Romo cites two of the Broker Act’s provisions–Section 156.201(b) and Section
156.204(c) of the Finance Code–to establish that licenses were not required. Between the years
2002 and 2004, Section 156.201(b) stated:
An individual may not act or attempt to act as a loan officer unless the
individual at the time is:
 
(1)licensed under this chapter;
 
(2)sponsored by a licensed mortgage broker and acting for the mortgage broker; or
 
(3)exempt under Section 156.202.

Mortgage Broker License Act, 76th Leg., R.S., ch. 1254, § 2, 1999 Tex.Gen.Laws 4334, 4337. 
By its plain terms, this statute allowed an unlicensed person to act as a loan officer as long as she
was sponsored by, and acting for, a licensed mortgage broker.
            Section 156.204 sets out the qualifications for mortgage brokers and loan officers. 
Between 2002 and 2004, Subsection (c)(4) required a person to satisfy one of the following
criteria to be licensed as a loan officer:
(A)the person meets one of the requirements described by Subsection (a)(4)
[which pertained to the licensing of mortgage brokers];
 
(B)the person has successfully completed 15 hours of education courses
approved by the commissioner under this section;
 
(C) the person has 18 months of experience as a loan officer as evidenced by
documentary proof of full-time employment as a loan officer with a
mortgage broker or a person exempt under Section 156.202; or
 
(D)for applications received prior to January 1, 2000, the mortgage broker that
will sponsor the applicant provides a certification under oath that the
applicant has been provided necessary and appropriate education and
training regarding all applicable state and federal law and regulations
relating to mortgage loans.

Id. at 1999 Tex.Gen.Laws at 4339. Under this subsection, one way to become eligible for a
loan officer license was to gain eighteen months of experience as a loan officer with a mortgage
broker. Thus, this subsection necessarily contemplated that a person could serve as a loan officer
without a license.
            Although the plain meaning of Sections 156.201(b)(2) and 156.204(c)(4) indicates that a
person did not need a license to work as a loan officer if she was sponsored by a mortgage
broker, the State argues that this interpretation cannot be correct when the statutes are read in
conjunction with Section 156.406. Section 156.406 provides: “A person who is not exempt
under this chapter and who acts as a . . . loan officer without first obtaining a license required
under this chapter commits an offense.” Tex.Fin.Code Ann. § 156.406(a)(West 2006). This
section also provides that a person who receives money for “acting as a . . . loan officer without
an active license or being exempt under this chapter is liable for damages . . . .” Id. at
§ 156.406(b). The State suggests that this statute demonstrates that all loan officers must be
licensed unless they come within an express statutory exemption. Section 156.202 sets out the
exemptions from licensure, and none of the exemptions applies here. See id. at § 156.202 (West
Supp. 2010). However, the plain language of Section 156.201(b)(2) effectively provided an
exemption for persons who were sponsored by a mortgage broker. Section 156.406 does not
explicitly reference Section 156.202. Therefore, the Legislature could have intended the word
“exempt” in Section 156.406 to refer not only to the exemptions set out in Section 156.202, but
also the exemption that is provided by Section 156.201(b)(2). This interpretation harmonizes
and gives effect to all of the provisions. The State’s interpretation would render ineffective the
language of Subsections 156.201(b)(2) and 156.204(c)(4)(C).
            Citing legislative history, the State argues that Subsection 156.204(c)(4)(C), which
allowed a person to qualify for a licence based on eighteen months of experience, was meant to
be a “grandfathering” provision. The bill analysis for the Broker Act states that the Act “would
prohibit a person from acting as a loan officer unless the person currently was sponsored by a
mortgage broker and acting on that person’s behalf, unless exempted by law.” [Emphasis
added]. See http://www.lrl.state.tx.us/scanned/hroBillAnalyses/76-0/SB1074.pdf. The State
contends that the word “currently” referred to people who were acting as loan officers on the
effective date of the legislation. Thus, only people who were acting as loan officers on the
effective date could qualify for a license based on eighteen months of experience. But a more
natural reading of the bill analysis actually supports the plain meaning of Section 156.201(b),
which stated that a person could not act as a loan officer unless the person “at the time” was
either licensed, exempt under Section 156.202, or “sponsored by a licensed mortgage broker and
acting for the mortgage broker.” Moreover, there was nothing in the language of Subsection
156.204(c)(4)(C) to suggest that the eighteen-month experience option was limited to people
who were acting as loan officers on the effective date of the Broker Act. By contrast, the
immediately following subsection–subsection (c)(4)(D)–did include a type of grandfather clause. 
It stated that “for applications received prior to January 1, 2000,” an applicant could obtain a loan
officer’s license by submitting the sponsoring mortgage broker’s certification that the applicant
had received training regarding laws governing mortgage loans. Clearly, the Legislature knows
how to draft a grandfather clause if that is its intent. See, e.g., W.H.V., Inc. v. Assocs. Housing
Fin., LLC, 43 S.W.3d 83, 93 (Tex.App.--Dallas 2001, pet. denied)(describing language providing
that a statute did not “affect or change the classification of a manufactured home” if it “was
permanently affixed to real property before January 1, 1996” as a grandfather clause); Tex. Dep’t
of Banking v. Mount Olivet Cemetery Ass’n, 27 S.W.3d 276, 280 (Tex.App.--Austin 2000, pet.
denied)(describing language providing that an “investment . . . included in a plan approved
before the effective date of this Act . . . may continue in effect” as a grandfather clause). We will
not write a grandfather clause into the statute based merely on the ambiguous use of the word
“currently” in one sentence of the legislative history.
            The State further argues that the Legislature must have intended for the eighteen-month
option to be a temporary, “grandfathering” provision because all of the other options provided by
Section 156.204(c) were more rigorous than this option. We disagree with this characterization. 
Pursuant to Subsection (c)(4), a person could qualify for a loan officer’s license by meeting one
of the eligibility requirements for obtaining a broker’s license. As might be expected, the
eligibility requirements for obtaining a broker’s license were more rigorous than the requirements
for obtaining a loan officer’s license. But Subsection (c)(4) also allowed a person to qualify
merely by completing fifteen hours of education courses. This is certainly no more rigorous than
completing eighteen months of employment as a loan officer.
            Next, the State cites the 2007 amendments to the Broker Act in support of its argument
that the eighteen-month option was intended to be a temporary provision. The amendments
retained the option of using eighteen months of experience to qualify for a loan officer license,
but that experience must have been with a person exempt from licensing under Section 156.202. 
The experience of working with a mortgage broker would no longer count. See Act of June 15,
2007, 80th Leg., R.S., ch. 905, § 6, 2007 Tex.Gen.Laws 2555, 2256-58.


 Rather than bolster the
State’s interpretation, we believe the amendments weaken it. We generally presume that the
Legislature intends to change, rather than merely clarify, existing law when it enacts an
amendment. Pub. Util. Comm’n of Texas v. Cities of Harlingen, 311 S.W.3d 610, 620 n.7
(Tex.App.--Austin 2010, no pet.). The bill analysis for the amendments states that the new
legislation “would correct technical issues and remove outdated language.” See
http://www.hro.house.state.tx.us/pdf/ba80r/hb2783.pdf. It also states, “Unless exempted, an
individual could not act as a mortgage loan officer unless the individual was both licensed as a
loan officer and sponsored by a licensed mortgage broker.” Id. These statements support the
presumption that the Legislature intended to change the law.
            The State asserts that the Broker Act is remedial legislation, which should be interpreted
liberally to serve its purpose of protecting consumers. Although we may construe a remedial
statute liberally, we cannot ignore its plain language to construe it in a way that we believe
supports the Legislature’s general purpose. See Gilmore v. Lumbermen’s Reciprocal Ass’n, 292
S.W. 204, 205 (Tex. Comm’n App. 1927)(“‘[T]hough the statute is remedial in the broadest
sense of the term, to be liberally construed, the court is without power or authority to change the
plain language thereof by construing it to mean the reverse of what is clearly stated therein.’”).
            Finally, the State relies on an affidavit by the Commissioner of the Department of
Savings and Mortgage Lending. The Commissioner is charged with administering the Broker
Act. See Tex.Fin.Code Ann. § 156.101(a)(West 2010). In his affidavit, the Commissioner
claims that the Department has always interpreted the Broker Act as requiring licenses for all
loan officers. We must seriously consider the construction of a statute by the agency charged
with its enforcement, unless the administrative construction is unreasonable or contradicts the
plain language of the statute. Tarrant Appraisal Dist. v. Moore, 845 S.W.2d 820, 823 (Tex.
1993). Because the Commissioner’s construction contradicts the plain language of the statute, it
is not persuasive.
            In short, the statutory language is plain, and the State has provided no compelling reason
to deviate from it. We have focused on the statutory language because “ordinary citizens should
be able to rely on the plain language of a statute to mean what it says.” Fitzgerald v. Advanced
Spine Fixation Sys., Inc., 996 S.W.2d 864, 866 (Tex. 1999). As the Texas Supreme Court
recently stated, “[W]e must take statutes as we find them.” Tex. Lottery Comm’n v. First State
Bank of DeQueen, 325 S.W.3d 628, 637 (Tex. 2010). Even if we think that the Legislature made
a mistake, we “are not empowered to ‘fix’ the mistake by disregarding direct and clear statutory
language that does not create an absurdity.” Id. at 638. The statutory language allowing
unlicensed loan officers to work for mortgage brokers may not have reflected the ideal policy
choice, but it is hardly absurd.
            Because licenses were not required for loan officers who were sponsored by and acting
for a licensed mortgage broker during the period relevant to this suit, neither Simpson nor
Blanchet needed a license. We therefore sustain Romo’s second and fourth issues and find it
unnecessary to address his first, fifth, and sixth issues.
            In addition to its conclusion that Romo violated the Broker Act by employing Simpson
and Blanchet as unlicensed loan officers, the trial court also concluded that Romo violated the
Broker Act by failing to notify the Commissioner of the names and addresses of his businesses. 
As a result, the court permanently enjoined Romo from conducting business as a mortgage
broker under any assumed name without first notifying the Commissioner of the name, failing to
notify the Commissioner of any new business address, and failing to obtain a license certificate
for any new address. In his third issue, Romo attacks the injunctive relief on the ground that the
State offered no evidence of imminent or irreparable harm or of the lack of an adequate remedy
at law. The State argues that it did not have to establish those elements to be entitled to
injunctive relief under the DTPA.
            The arguments on both sides of this issue are misguided. The trial court did not
determine that Romo violated the DTPA by failing to notify the Commissioner of the names and
addresses of his businesses. Therefore, the DTPA cannot provide authority for the injunctive
relief. But that does not mean that the State was required to meet the ordinary requirements for
an injunction. The trial court concluded that Romo violated the Broker Act by failing to notify
the Commissioner of the names and addresses of his businesses. The Broker Act authorizes the
Commissioner of Savings and Mortgage Lending to sue to enjoin a violation of the Act. See
Tex.Fin.Code Ann. § 156.103(a)(West 2006). The Broker Act expressly provides that “it is not
necessary to allege or prove that an adequate remedy at law does not exist or that substantial or
irreparable damage would result . . . .” Id. Because the Broker Act dispenses with the
requirements of irreparable harm and inadequacy of legal remedies, the lack of evidence on these
elements does not invalidate the injunctive relief. Romo’s third issue is overruled.
            Romo’s seventh and final issue concerns the award of $5,000 in attorney’s fees. Romo
argues that the State was not entitled to attorney’s fees because it did not prevail under the
DTPA, and the Broker Act does not provide for attorney’s fees. He also points out that the State
failed to segregate its attorney’s fees. The State does not contest Romo’s assertion that the
Broker Act does not provide for attorney’s fees. But it argues that the attorney’s fee award was
based on Section 402.006 of the Texas Government Code, which does not require segregation of
fees. The section cited by the State provides: “In a case in which the state is entitled to recover a
penalty or damages the attorney general is entitled, on behalf of the state, to reasonable attorney’s
fees and court costs.” Tex.Gov’t Code Ann. § 402.006(c)(West 2005). Because the trial court
ordered a civil penalty in this case, the State contends that it is entitled to recover attorney’s fees. 
As we have explained above, however, the State was not entitled to recover the civil penalty. 
Accordingly, there is no basis for the attorney’s fee award. Romo’s seventh issue is sustained.
            The trial court’s judgment is reversed and rendered to the extent that it states that Romo
violated the Broker Act and the DTPA by employing unlicensed loan officers and orders him to
pay $82,785 as restitution, $7,500 as a civil penalty, and $5,000 in attorney’s fees. In all other
respects, the judgment is affirmed.


February 9, 2011
DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Garcia, Judge
Garcia, Judge (Sitting by Assignment)