MORTGAGE AND TRUST, INC., et al., Appellants,

v.

BONNER & COMPANY, INC., Appellee.

No. 1269.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 29, 1978.

Rehearing Denied Sept. 21, 1978.

James F. Buchanan, Kleberg & Weil, Corpus Christi, for appellants.

Lola L. Bonner, Bonner & Jackson, Rockport, for appellee.

## OPINION

NYE, Chief Justice.

This is a mechanic's and materialman's lien case involving the priority of a mechanic's and materialman's lien asserted by Bonner & Co., a contractor, and the recorded deed of trust lienholder, Mortgage and Trust. Bonner brought suit against a number of defendants to establish and foreclose a constitutional and a statutory mechanic's and materialman's lien. Trial was to the court without the intervention of a jury. The trial court entered a joint and several judgment against Mortgage and Trust and Sundance (the present owner of the land), for $34,307.18, representing the outstanding amount found to be due Bonner under its construction contract. The trial court also entered judgment foreclosing Bonner's mechanic's and materialman's lien on a portion of the land secured under the deed of trust. Mortgage and Trust and Sundance perfected their appeal to this Court.

A somewhat detailed, chronological recitation of the facts is necessary to gain proper perspective of the trial court's action and the contentions of the parties on appeal.

On March 27, 1972, Ranco, the original owner of the property in question, acquired a 66.446 acre tract in Portland, Texas. On the same day, Ranco executed a deed of trust (Deed of Trust One) covering the property in favor of Mortgage and Trust to secure a $398,000.00 "land loan" evidenced

by a promissory note executed on the same day. On April 14, 1972, Mortgage and Trust (a private corporation) assigned its entire interest in the original note and Deed of Trust (One) to M & T Mortgage Investors (a public corporation) for a recited consideration of $398,000.00.

Thereafter, Ranco began to develop the 66.446 acre tract by platting it as a subdivision known as Briar Bluff Units 1 and 2. In September of 1972, Bonner was contacted to obtain a bid on the installation of water and sewer systems in the subdivision. A contract between Bonner and Ranco resulted which was executed on December 4, 1972. This agreement was not filed of record.

To finance the development of this subdivision, Ranco obtained a second loan from Mortgage and Trust in the amount of $573,-000.00. This transaction was evidenced by a promissory note, secured by a deed of trust (Deed of Trust Two) covering all of Briar Bluff Units 1 and 2. Deed of Trust Two was filed for record with the county clerk on December 6, 1972, and recorded on December 8, 1972.

On December 8, 1972, Mortgage and Trust disbursed $145,000.00 of the "development loan" to M & T Investors to repay a portion of the original "land loan" secured by Deed of Trust One which had been previously assigned to M & T Investors. On December 12, 1972, M & T Investors released from Deed of Trust One Briar Bluff Unit 1 and Lots 35–43 of Briar Bluff Unit 2. The partial release was duly filed and recorded in the Deed of Trust Records of San Patricio County.

Approximately a year later, on January 14, 1974, M & T Investors reassigned the original "land loan" note (to the extent the loan had not been repaid) and Deed of Trust One (to the extent that lien had not been released) to Mortgage and Trust. The reassigned Deed of Trust One was duly filed of record and recorded on February 15, 1974. On the same day as the reassignment, January 14, 1974, Ranco executed Deed of Trust Three in favor of Mortgage and Trust to secure: 1) the renewal and extension of the remaining $233,000.00 indebtedness secured by Deed of Trust One; 2) the renewal and extension of the $573,-000.00 indebtedness secured by Deed of Trust Two; 3) the renewal and extension of an additional $120,000.00 of indebtedness not herein involved; and also 4) a new loan not herein involved. On March 14, 1974, plaintiff filed an affidavit claiming a mechanic's lien for work done on Briar Bluff Unit 1 and Unit 2.

On November 5, 1974, Mortgage and Trust foreclosed its Deed of Trust Three. The Substitute Trustee sold and conveyed all property secured by Deed of Trust Three to Mortgage and Trust for a recited consideration of $829,113.00, all as set forth in the Substitute Trustee's Deed. The property was subsequently sold by Mortgage and Trust to Sundance, the other appellant.

On September 23, 1975, Bonner filed suit against Ranco, the original developer, Mortgage and Trust, Sundance, and numerous other defendants who appeared to have interests in Briar Bluff, seeking: 1) to recover money due under its original contract with Ranco; 2) to establish and to foreclose its mechanic's and materialman's lien on the subject property; and to 3) obtain a declaration of the priorities of various lien claimants. Mortgage and Trust answered, alleging that its deed of trust liens were all superior to the mechanic's and materialman's lien asserted by Bonner and that the foreclosure and sale under Deed of Trust Three extinguished Bonner's inferior lien. On December 12, 1975, Ranco filed a voluntary petition in bankruptcy and it was eventually discharged of its debts.

At the trial, Bonner attempted to establish the earliest possible inception of its mechanic's and materialman's lien by showing that its construction operations and job site materials were visible by an inspection of the premises prior to the inception of Mortgage and Trust's deed of trust liens (one and two). To recapitulate: Deed of Trust One was filed for record on April 11, 1972, Deed of Trust Two was filed for record on December 6, 1972, and the partial release was executed on December 12, 1972.

Deed of Trust Three which was executed on January 14, 1974, renewed and extended the outstanding indebtedness secured by Deeds of Trust One and Two. Bonner's mechanic's and materialman's lien affidavit was filed for record on March 14, 1972. The trial court found that the presence of materials and the construction work was visible and apparent from inspection of the premises on and after December 13, 1972. The trial court concluded that Bonner had perfected a valid mechanic's and materialman's lien by the filing of its affidavit on March 14, 1974, relating back to December 13, 1972.

The trial court finally held that Bonner had a superior lien as to that portion of the land M & T Investors had released under Deed of Trust One. The trial court found in part and concluded that: 1) M & T Investors and Mortgage and Trust were alto ego corporations; 2) M & T Investors' partial release pertaining to Deed of Trust One had the effect of releasing the same land (Briar Bluff Unit 1 and Lots 35–43, Block 1, Briar Bluff Unit 2) secured by Deeds of Trust Two and Three; 3) Bonner's lien was superior to other liens on such released land. Consequently, the trial court held Bonner was entitled to have foreclosure of its mechanic's and materialman's lien as to Briar Bluff Unit 1 and Lots 35–43, Block 1, Briar Bluff Unit 2, because Bonner's superior lien was not extinguished by the foreclosure and sale of the property.

The trial court stated in its conclusions of law that defendant Mortgage and Trust held the proceeds of the foreclosure sale ($829,113.00) in trust for the benefit of Bonner to the extent of its lien ($34,307.18). The district court's findings of fact and conclusions of law recitations also suggested that the difference in the sales price to Sundance of $1,170,000.00 and the foreclosure proceeds of $829,113.00 were also held in trust for the benefit of Bonner. Judgment was entered against Mortgage and Trust and Sundance jointly and severally, for $34,307.18 and foreclosure of plaintiff's mechanic's lien on Briar Bluff Unit 1 and Lots 35–43, Block 1, Briar Bluff Unit 2 was so ordered.

Defendants Mortgage and Trust and Sundance bring forward nine points of error which can be grouped into three general categories. The first six points of error attack what we believe to be the crux of the trial court's judgment: the establishment of the priority of Bonner's mechanic's and materialman's lien over Deeds of Trust Two and Three, by finding that Mortgage and Trust and M & T Investors were alter egos. Mortgage and Trust and Sundance's second contention (point of error seven) is that the deed of trust liens of Mortgage and Trust (one, two and three) were superior to the mechanic's lien claim of Bonner and the foreclosure of such superior lien extinguished the inferior mechanic's lien claim as a matter of law. Appellants also contend that there is no evidence (and in the alternative insufficient evidence) to support the trial court's findings that Mortgage and Trust and Sundance held the proceeds of the sale of the property in trust for the benefit of Bonner.

■ Appellants first contend that the trial court's findings of fact pertinent to the alter ego theory are not supported by pleadings or evidence. A no evidence point of error is a question of law, and in considering the question, it is the duty of this Court to view the evidence in its most favorable light, considering only the evidence and reasonable inferences drawn therefrom in support of the judgment and to disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.Sup. 1965); *Transport Insurance Company v. Mabra*, 487 S.W.2d 704 (Tex.Sup.1972).

■ As a general rule, two or more corporations are separate and distinct legal entities, and the separate identity of each will not be disregarded in order to impose liability on one corporation for the acts of another corporation merely because of: a) overlapping stock ownership; b) a duplication of some or all of the directors or officers; or c) an exercise of the control that stock ownership gives to stockholders. *Gentry v. Credit Plan Corporation of Houston*, 528 S.W.2d 571, 573 (Tex.Sup.1975). In

some circumstances, however, the one corporation may be regarded as the "alter ego" of another where management and operations are assimilated to the extent that the subsidiary is simply a name or a conduit through which the parent conducts its business. *Gentry v. Credit Plan Corporation of Houston*, supra. The corporate entity may thus be disregarded where it is used as a cloak or cover for fraud or illegality of operations. See 18 Am.Jur.2d § 15, pp. 561–562. *Gentry v. Credit Plan Corporation of Houston*, supra at 575. Accordingly, the "alter ego" theory, or other similar theories, will not be utilized to disregard the corporate entity unless: 1) it is made to appear that there is such a unity that the separateness of the corporation has ceased to exist; and 2) the facts are such that an adherence to the fiction of the separate existence of the particular corporation would, under the particular circumstances, sanction fraud or promote injustice. *First National Bank in Canyon v. Gamble*, 134 Tex. 112, 132 S.W.2d 100, 103 (1939). Accord, *Gentry v. Credit Plan Corporation of Houston*, supra at 573.

The trial court's findings of fact under attack, relating to the "alter ego" theory, are, in essence, as follows: 1) at the time Bonner installed the sewer and water lines and at the time of trial, the addresses of defendant Mortgage and Trust and M & T Investors were the same; 2) the corporate officers of both defendants were usually one and the same; 3) the officers of Ranco were unaware of M & T Investors and thought that they were only doing business with Mortgage and Trust; 4) Mortgage and Trust advanced funds to M & T Investors although the latter was unable to disburse such funds without specific approval of the officers and personnel of Mortgage and Trust; and 5) Mortgage and Trust operated as the alter ego of M & T Investors and the act of one was the act of the other. This latter "finding of fact" is actually a "conclusion of law" and is not particularly helpful or significant without reference to the underlying facts which justify this conclusion. See *Bell Oil & Gas Co. v. Allied Chemical Corp.*, 431 S.W.2d 336, 339 nn. 2, 3

(Tex.Sup.1968). Our inquiry, therefore, will be: 1) whether the evidence (under the appropriate standards of review hereinabove stated) will support findings 1–4; and 2) if so, whether these findings are sufficient to support the conclusion that Mortgage and Trust and M & T Investors are alter ego corporations.

There is very little evidence in the record concerning the overall business relationship between Mortgage and Trust and M & T Investors. There is no evidence in the record that either corporation is a wholly owned subsidiary of the other corporation. Mortgage and Trust is a closely held private corporation, chartered in 1946, making permanent loans on single family dwellings to be built in newly developed residential areas, its principal line of business. It also made preliminary land and development loans to real estate developers. Although it is not entirely clear from the record, it appears that Mortgage and Trust discounts, or otherwise assigns, many of these land and development loans to other corporations, including M & T Investors. Seventy per cent of the outstanding shares of stock of Mortgage and Trust is owned by a Mr. John S. Dunn. The remaining thirty per cent of the stock is owned by the officers and employees of Mortgage and Trust. On the other hand, M & T Investors is a publicly held corporation chartered in 1970 with approximately 3,500 shareholders. There is evidence in the record suggesting that a course of business dealings was had between the two corporations. M & T Investors, for example, has the contractual right of first refusal to purchase loans generated by Mortgage and Trust. Additionally, a third corporation M & T Management Company, a wholly owned subsidiary of Mortgage and Trust, acted as the "investment advisor" of M & T Investors pursuant to a contract between M & T Investors and M & T Management Company. The record shows that all three of these corporations, as well as several other corporations, have maintained the same business address, and several of the officers of Mortgage and Trust were also officers of M & T Investors.

Most of the specific evidence relating to the relationship between Mortgage and Trust and M & T Investors was introduced for the purpose of explaining the transaction whereby Mortgage and Trust assigned the original note secured by Deed of Trust One to M & T Investors, M & T Investors' partial release under Deed of Trust One, and the subsequent reassignment to Mortgage and Trust. Findings of fact 3 and 4 above specifically relate to the assignment and reassignment transactions between Mortgage and Trust and M & T Investors.

The record shows that at the time Mortgage and Trust assigned the original "land loan" and Deed of Trust One to M & T Investors, M & T Investors paid the recited cash consideration by issuing a check to Mortgage and Trust as payee. The original assignment documents were all duly recorded. There is no evidence in the record to suggest that either corporation attempted to conceal the various transactions from Ranco. Ranco, after the original assignment, was indebted to M & T Investors for the $398,000.00 "land loan."

Bonner asserts that the unity between Mortgage and Trust and M & T Investors is evidenced by the Mortgage and Trust's continued relations with Ranco in completing the next phase of its development of the Briar Bluff Subdivision after it "purported to convey [its] *entire* interest in the land to M & T Investors, a 'separate and freestanding entity.'" Specifically, Bonner argues that Mr. Hoover, vice president of Mortgage and Trust, directed Ranco in the fall of 1972 to start taking bids from contractors on the proposed subdivision at a time, after the assignment, when Mortgage and Trust had no interest in the project. Bonner, however, overlooks the undisputed evidence that, at this same time, Ranco was seeking the second "development loan" from Mortgage and Trust. The bids Mr. Hoover suggested that Ranco should obtain were to construct the improvements Mortgage and Trust proposed to finance under the "development loan," (the second deed of trust).

The record indicates that $145,000.00 of the $398,000.00 "development loan" was disbursed by Mortgage and Trust to M & T Investors to repay, in part, the assigned original "land loan" Ranco then owed to M & T Investors, and to obtain a partial release under Deed of Trust One of the land to be developed under the "development loan" secured by Deed of Trust Two. On December 8, 1972, the second loan was finalized between Ranco and Mortgage and Trust and Mr. Hoover called the Houston office of Mortgage and Trust for the purpose of authorizing Mortgage and Trust to pay $145,000.00 of the second loan to M & T Investors. After Mortgage and Trust authorized the initial disbursement to M & T Investors, there is no evidence that Mortgage and Trust thereafter controlled M & T Investors' disposition of such funds. There is ample evidence in the record, however, that Mortgage and Trust supervised the disbursement of the proceeds of the "development loan" for payments made by or on behalf of Ranco. There is nothing in the record to suggest that this was anything more than sound business practice.

■ We have carefully examined the entire record and find that the *only* evidence that could possibly suggest an "alter ego" theory is that there were overlapping officers and directors, and that the two corporations officed in the same building. This evidence does not invoke the "alter ego" theory. This evidence will not permit us to disregard the corporate entities, particularly where, as here, resulting fraud or injustice has not been raised by the pleadings, by any evidence, or by the trial court's findings. *Gentry v. Credit Plan Corporation of Houston*, supra; *Bell Oil & Gas Co. v. Allied Chemical Co.*, supra; *First Nat. Bank in Canyon v. Gamble*, supra. Bonner had no dealings or relationship with either Mortgage and Trust or M & T Investors. There was no findings by the trial court nor any evidence of fraud. The partial release of the deed of trust lien did not extinguish the Deed of Trust Two lien nor did the release or the language contained in the release purport to do so. Even if Mortgage and Trust or M & T Investors were alter egos,

the partial release did not release the deed of trust lien under Deed of Trust Two which was prior to time to the earliest transaction of Bonner on the job site. We hold that Bonner cannot be heard to attack the corporate existence of these corporations under these facts. Appellants' points of error one through six are sustained.

We turn next to consider appellee Bonner's "reply point No. 3" which states, "The district court did not err in finding and concluding that plaintiff's mechanic's and constitutional liens were superior to defendant Mortgage and Trust, Inc.'s Deed of Trust liens." Under this reply point, Bonner states, in essence, that if this Court should sustain appellant's points of error one through four, then "[this court] must determine the date for commencement of work and delivery of material," in order to determine whether the trial court properly found that construction was visible on December 13, 1972 when it could have been an earlier date. Appellants answer this reply point by contending that Bonner has failed to preserve, by a proper cross-point, its complaint concerning the trial court's finding. We agree that if this is a "cross-point", it does not meet the minimum briefing requirements.

Rule 420, Texas Rules of Civil Procedure, which pertains to the requirements of "appellee's brief" provides that an appellee who desires to complain of any ruling or action of the trial court should state his complaints in substantially the form required of appellants under Rule 418. Bonner failed to bring forward a cross-point complaining of the trial court's finding, but rather suggests that this Court should make an independent determination of the date upon which delivered materials or actual construction was visible at the construction site. We have the power to pass upon the weight of the evidence supporting a finding of fact when our jurisdiction in this respect is properly invoked. However, we cannot substitute our findings with respect to the evidence for the findings of the trial court. *Wilson v. Wilson*, 145 Tex. 607, 201 S.W.2d 226, 227 (1947).

This, in effect, is what Bonner has requested us to do. Even if we were to consider the argument contained in Bonner's reply point, as we understand it, there is little or no evidence in the record to support an earlier date (than December 13, 1972). Bonner, apparently does not attack specifically the trial court's finding by legally or factually insufficient evidence points. If we assume that this point properly presented both legal and factual insufficiency attacks on the trial court's finding, it would be overruled anyway. There is ample evidence to support the trial court's finding and such finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.Sup.1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

We, therefore, hold that, under the facts of this case, the alter ego theory is not available to Bonner to establish the priority of its mechanic's and materialman's lien. There is ample evidence in the record to support the trial court's finding that Bonner first commenced visible construction on December 13, 1972. Pursuant to Article 5459 § 2(a), V.A.T.S. Ann. (1962), the inception of Bonner's lien under the relation back doctrine is December 13, 1972. Thus, Bonner's lien postdates the inception of the liens created under both Deed of Trust One and Deed of Trust Two. Deed of Trust Three was a renewal and extension of the outstanding indebtedness under both Deed of Trust One and Deed of Trust Two. Bonner would not be entitled to the proceeds of the foreclosure sale unless the funds generated by the sale were in excess of the expense of sale and Ranco's indebtedness to Mortgage and Trust. There was no evidence here of any sums in excess of the indebtedness to Mortgage and Trust generated at the foreclosure sale.

A mechanic's and materialman's lien upon improvements is superior to a prior recorded deed of trust only where the improvements made can be removed without material injury to the land and to the preexisting improvements, or to the im-

provements removed. *First National Bank in Dallas v. Whirlpool Corp.,* 517 S.W.2d 262 (Tex.Sup.1975). This exception is not applicable in the case before us.

 This brings us to point of error seven wherein the appellants complain that the trial court erred in granting a judgment of foreclosure in favor of Bonner when Mortgage and Trust's superior lien extinguished Bonner's lien as a matter of law.

Under the undisputed facts of this case, Mortgage and Trust held a deed of trust lien to the unreleased portion of Briar Bluff Unit 2, (Deeds of Trust One and Two), which the trial court properly held was superior to Bonner's lien claim. Mortgage and Trust also held a deed of trust lien to Briar Bluff Unit 1 and the released portion of Unit 2 under Deed of Trust Two. The trial court erroneously held that this second deed of trust lien was inferior to Bonner's lien claim under the alter ego theory. The liens under Deeds of Trust One and Two attached and were prior to Bonner's lien even to the date it related back and were, therefore, superior. When Deed of Trust Three was executed it specifically renewed and extended the unreleased lien created in Deed of Trust One and the entire lien created in Deed of Trust Two as security for payment of $233,000.00 and $573,000.00 representing the outstanding indebtedness secured by Deeds of Trust One and Two, respectively. In addition, it also secured other liens (not relevant here) that were prior in time to Bonner's lien. When Mortgage and Trust's superior lien (Deed of Trust Three) was foreclosed, Bonner's inferior lien was extinguished. The purchaser at the trustee's sale acquired title to the property free of the claims of Bonner. *Diversified Mortgage Investors v. Blaylock,* Vol. 21 Sup.Ct.J. 521, 529 (1978). *National Western Life Ins. Co. v. Acreman,* 425 S.W.2d 815, 817–18 (Tex.Sup.1968). The inferior lien, under such circumstances, was extinguished. *Pierce v. Mays,* 277 S.W.2d 155 (Tex.Civ.App.—Amarillo 1954), *aff'd,* 154 Tex. 487, 281 S.W.2d 79 (1955). The trial court erred, therefore, in granting Bonner foreclosure of its lien. Appellants' point of error number seven is also sustained.

 The trial court granted a money judgment in favor of Bonner against Mortgage and Trust and Sundance in the amount of $34,307.18 for labor and materials furnished to the construction site. In support of this money judgment, the trial court held that Mortgage and Trust and Sundance held the proceeds of the sale of the property in trust for the benefit of Bonner. In points of error eight and nine, appellants attack the trial court's findings of no evidence and insufficient evidence grounds.

On November 5, 1974, Mortgage and Trust foreclosed its lien of January 14, 1974, for the sum of $829,113.00, which included an additional indebtedness of Ranco for a subdivision known as Candlelite Park Subdivision in Sinton, San Patricio County, Texas. By deed dated June 23, 1975, defendant Mortgage and Trust sold Briar Bluff, Units One and Two, to defendant Sundance for the consideration of $1,170,-000.00, a sum in excess of the debt due from Ranco and a sum in excess of the amount bid at the foreclosure sale. There is nothing in the record to indicate that this sale to Sundance was irregular. Under the terms of the deed of trust dated January 14, 1974, the Trustee, at foreclosure, was directed to first pay the expenses of sale, then pay the full amount of principal and interest due by the Grantor (Ranco), and pay the remaining balance, if any, to the Grantors (Ranco), their heirs and assigns. There is absolutely no evidence that the amount of indebtedness of Ranco plus the expense of trustee's sale (finding of fact number 32) was less than the foreclosure sale price.[1] The only

---

1. The trial court found:

 "29. On January 14, 1974, M & T Mortgage Investors transferred its lien dated March 27, 1972, in the amount of $398,000 to Mortgage and Trust, Inc., LESS the property which had theretofore been released and consisting of All of Unit One and a large portion of Unit Two.

 30. On November 5, 1974, Defendant Mortgage & Trust, Inc., foreclosed its lien of

money that Bonner could possibly lay claim to would be the excess from the foreclosure sale.

The trial court concluded that the difference between the foreclosure sale and the sale to Sundance created a surplus and that Bonner was entitled to $34,307.18 of such surplus. The only basis in law for such a conclusion would be a finding of fraud existing between Mortgage and Trust and Sundance. There was no irregularity pled or proved concerning the foreclosure sale or in the conveyance to Sundance. There was no evidence of either nor any findings of such. Bonner argues that this subsequent sale by Mortgage and Trust to Sundance must be considered by this Court as the "true consideration" received at the foreclosure sale. This would be pure speculation, since there was no evidence of such. In support of this contention, Bonner relies upon *Habitat, Inc. v. McKanna*, 523 S.W.2d 787 (Tex.Civ.App.—Eastland 1974, no writ), and *Justice Mort. Inv. v. C. B. Thompson Const. Co.*, 533 S.W.2d 939 (Tex.Civ.App.—Amarillo 1976, writ ref'd n. r. e.). We have examined each of these authorities and find they do not support the position Bonner asserts.

Appellants' points of error eight as well as nine are, therefore, sustained. The judgment of the trial court awarding a money judgment in favor of plaintiff and authorizing the foreclosure of plaintiff's mechanic's and materialman's liens was error. The trial court's judgment is hereby reversed and judgment is here rendered that plaintiff take nothing.

REVERSED AND RENDERED.

January 14, 1974, for the sum of $829,113.00, which included an indebtedness of Ranco for a subdivision known as Candlelite Park Subdivision in Sinton, San Patricio County, Texas.

31. By deed dated June 23, 1975, Defendant Mortgage and Trust, Inc., sold Briar Bluff, Units One and Two to Defendant Sundance for the consideration of $1,170,000.00, a sum in excess of the debt due from Ranco and a sum in excess of the amount bid at the foreclosure sale.

32. Under the terms of the Deed of Trust dated January 14, 1974, the Trustee, at foreclosure, was directed to first pay the expenses of sale, then pay the full amount of principal and interest due by the Grantor, and pay the remaining balance, if any, to the Grantors (Ranco), their heirs and assigns.

33. The foreclosure sale of November 5, 1974, generated a sum in excess of the sale expenses and the amount due by Ranco."