

# NUMBER 13-06-575-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

POKORNE PRIVATE
CAPITAL GROUP, LLC,                                                     Appellant,

v.

21ST MORTGAGE CORP. &
NELLA INVESTMENTS, INC.                                               Appellees.

**On appeal from the 26th District Court of Williamson County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides
Memorandum Opinion by Justice Garza**

This is an appeal from an order of the trial court granting no-evidence motions for

summary judgment in favor of appellees, 21st Mortgage Corporation ("21st Mortgage") and

Nella Investments, Inc. ("Nella"),[1] and denying a cross-motion for traditional summary

---

[1] We refer to 21st Mortgage Corporation ("21st Mortgage") and Nella Investments, Inc. ("Nella") collectively as appellees because the parties jointly filed an appellate brief and both parties raised the same arguments with the trial court in their respective no-evidence motions for summary judgment. In addition,

judgment filed by appellant, Pokorne Private Capital Group, LLC.  This case involves the priority of conflicting security interests in a manufactured home located in Williamson County.  By three issues, appellant contends that the trial court erred in granting appellees' no-evidence motions for summary judgment and denying its cross-motion for summary judgment because:  (1) once a manufactured home is elected and recognized by the State of Texas as real property, it is no longer inventory under the business and commerce code and thus not subject to an inventory lien; (2) once the manufactured home was sold, 21st Mortgage's inventory lien no longer attached to the manufactured home but rather to the proceeds of the purchase money loan made by appellant to Sedona; and (3) appellant produced more than a scintilla of probative evidence to establish its causes of action for trespass, trespass to try title, conversion, and its declaratory judgment in response to appellees' no-evidence motions for summary judgment; alternatively, appellant conclusively established its causes of action.  We affirm the judgment of the trial court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Sedona Homes Inc. ("Sedona") is a retailer of manufactured homes in Texas.[2]  On May 24, 2001, Sedona granted Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt") a security interest in its inventory.[3]  Vanderbilt filed various UCC-1 documents with the Texas

---

appellant does not dispute to the collective treatment of 21st Mortgage and Nella on appeal or with the trial court.

[2] A "HUD-code manufactured home" is a structure built on or after June 15, 1976 on a permanent chassis that is (1) "designed for use as a dwelling without a permanent foundation when the structure is connected to the required utilities," (2) "transportable in one or more sections," and (3) "in the traveling mode, at least eight body feet in width or at least 40 body feet in length or, when erected on site, at least 320 square feet."  TEX. OCC. CODE ANN. § 1201.003(9) (Vernon Supp. 2007).

[3] The financing statement filed by Vanderbilt with the Texas Secretary of State contained the following description of property covered by the security interest:

All of Dealer's [Sedona Homes, Inc. and an additional debtor, First Texas Homes] inventory, new and used and repossessed units, presently owned and hereafter acquired (including but

2

Secretary of State to perfect its security interest. A Texas Inventory Finance Security Form was filed by Vanderbilt with the Texas Department of Housing and Community Affairs ("TDHCA") on May 23, 2002. Vanderbilt later assigned its interest to 21st Mortgage.

On August 31, 2001, Sedona purchased a manufactured home from Redman Homes. On September 6, 2001, Sedona installed the home in Williamson County. Appellees allege that once Sedona installed the home in Williamson County, the home became part of Sedona's inventory and, thus, it became subject to 21st Mortgage's first priority lien.[4]

On November 6, 2002, Sedona executed a deed of trust for the benefit of appellant to secure the purchase of (1) a piece of real property located in Hutto, Texas and (2) the home. Sedona executed the deed of trust to secure financing from appellant for what appellant refers to as a "land-home package," whereby the home and the land are conveyed in a single transaction and are financed with a traditional purchase-money mortgage.[5] Appellant filed a UCC financing statement and a fixture filing that secured the home, as well as the personal property within the home. Appellant recorded its deed of trust in Williamson County on November 8, 2002.

---

not limited to manufactured homes, travel trailers, camper units, boats, and recreational vehicles), equipment used or intended for use in conjunction therewith, accounts, contract rights, accounts receivable, general intangibles, chattel paper covering the property described above, any such property returned to Dealer, including such property as may be after-acquired property, and any and all Proceeds thereof.

[4] Appellees note that it held the "Home's Manufacturer's Certificate of Origin," which, in combination with the UCC-1 statements filed with the Texas Secretary of State, created a valid, perfected first priority lien on the manufactured home.

[5] Appellant characterizes the transaction with Sedona as a manufactured-home transaction, which has an explicit definition contained in the business and commerce code. A "'manufactured-home transaction' means a secured transaction: (A) that creates a purchase-money security interest in a manufactured home, other than a manufactured home held as inventory; or (B) in which a manufactured home, other than a manufactured home held as inventory, is the primary collateral." TEX. BUS. & COM. CODE ANN. § 9.102(a)(54) (Vernon Supp. 2007).

3

Sedona defaulted on its note, and appellant, therefore, foreclosed its security interest under the deed of trust and purchased the property and the home at the foreclosure sale on March 3, 2004. Appellant recorded the trustee's deed from the foreclosure sale on March 15, 2004. Appellant asserts that this recording put "the world on notice that Appellant was the legal owner of the real property and the manufactured home."

On July 21, 2004, Sedona filed a statement of ownership and location with the TDHCA. In the statement of ownership and location, Sedona elected to declare the home as real property and certified that it owns the piece of real property upon which the home sits or that it holds a qualifying long-term lease. Sedona recorded its statement of ownership and location in the Williamson County public records on July 26, 2004.

On October 4, 2004, 21st Mortgage repossessed the Home under the belief that it held a valid perfected first priority lien on the home and that it was entitled to self-help repossession of the home upon Sedona's default. Subsequently, on February 10, 2005, TDHCA issued a statement of ownership and location regarding the home to Ariceli L. Cruz and Diego A. Cruz, who purchased the home from Nella.[6]

On March 23, 2005, appellant filed suit against appellees for trespass, trespass to try title, and conversion for repossessing the home and for a declaratory judgment that its security interest in the home was superior to that of 21st Mortgage. On December 5, 2005, Nella and 21st Mortgage filed separate no-evidence motions for summary judgment arguing that 21st Mortgage's security interest was superior to appellant's and that 21st

---

[6] The record is not clear as to how the home was transferred from 21st Mortgage to Nella. Nella noted in its motion for summary judgment filed on December 5, 2005, that "[t]he acts of Nella did not cause any injury to Plaintiff because the Home was placed on Nella's property by 21st Mortgage and 21st Mortgage was simply taking possession of its own property." On the other hand, appellant, in its original petition, asserts that Nella was directed by 21st Mortgage to physically enter appellant's property and remove the Home.

Mortgage was entitled to repossess the home upon Sedona's default.[7]  On January 6, 2006, appellant filed its response to appellees' no-evidence motions for summary judgment and filed its own cross-motion for summary judgment.

On March 22, 2006, the trial court conducted a hearing on appellees' no-evidence motions for summary judgment and appellant's cross-motion for summary judgment.  The trial court, in its final judgment signed on August 29, 2006, granted appellees' no-evidence motions for summary judgment and denied appellant's cross-motion for summary judgment without stating grounds.  This appeal ensued.

## II. STANDARD OF REVIEW

The function of summary judgment is to eliminate patently unmeritorious claims and defenses, not to deprive litigants of the right to a trial by jury.  *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004) (citing *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989)); *Alaniz v. Hoyt*, 105 S.W.3d 330, 344 (Tex. App.–Corpus Christi 2003, no pet.).  We review a trial court's grant or denial of a motion for summary judgment de novo. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n.7 (Tex. 2005) (citing *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 290 n.137 (Tex. 2004)); *Alaniz*, 105 S.W.3d at 345.

### A. Traditional Motion for Summary Judgment

Under a traditional motion for summary judgment, the movant must establish that no material fact issue exists and that it is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *Alaniz*, 105 S.W.3d at 345; *Mowbray v. Avery*, 76 S.W.3d 663, 690 (Tex. App.–Corpus Christi

---

[7] Although 21st Mortgage and Nella filed separate no-evidence motions for summary judgment, both parties advanced the same arguments in their motions.

2002, pet. denied). After the movant produces evidence sufficient to show it is entitled to summary judgment, the nonmovant must then present evidence raising a fact issue. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

## B. No-Evidence Motion for Summary Judgment

Texas Rule of Civil Procedure 166a(i) provides that "a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof." TEX. R. CIV. P. 166a(i). The trial court must grant the motion if the nonmovant does not produce summary judgment evidence raising a genuine issue of material fact on each element challenged. *Id.*; *Mack Trucks v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The nonmovant must produce more than a scintilla of probative evidence to raise an issue of material fact. *Oasis Oil Corp. v. Koch Ref. Co. L.P.*, 60 S.W.3d 248, 252 (Tex. App.–Corpus Christi 2001, pet. denied). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc., v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). We "must examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam); *see City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

Where, as here, both parties move for summary judgment, and the trial court grants one motion and denies the other, we review both parties' motions for summary judgment and determine whether the trial court erred in its decision. *Tex. Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 648 (Tex. 2004); *Dow Chem. Co. v. Bright*, 89

6

S.W.3d 602, 605 (Tex. 2002); *Parker v. Parker*, 131 S.W.3d 524, 530 (Tex. App.–Fort Worth 2004, pet. denied). Moreover, "when a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (quoting *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989)).

## III. ANALYSIS

In its first and second issues, appellant asserts that once Sedona filed its statement of ownership and location and recorded it in the real property records of Williamson County on July 26, 2004, the home became, as a matter of law, real property in the form of an improvement to the underlying real property on which the home was located. Appellant therefore contends that its purchase-money security interest ("PMSI") had priority over 21st Mortgage's inventory lien. Additionally, appellant argues that once the home was sold at the foreclosure sale, 21st Mortgage's inventory lien attached to the proceeds of the purchase-money loan made to Sedona by appellant, rather than the home.

Conversely, appellees assert that appellant's security interest in the home is subordinate to 21st Mortgage's inventory lien that was filed "first in time." Appellees further argue that Sedona was not a buyer in the ordinary course of business; therefore, the home remained in Sedona's inventory, and the financing of the home by appellant did not extinguish 21st Mortgage's first priority lien on the home. Appellees also contend that appellant's security interest in the home was not perfected. Finally, appellees argue that even if 21st Mortgage's security interest had attached to the proceeds of the inventory loan, appellant failed to disburse the proceeds to 21st Mortgage.

**A. Applicable Law**

7

Manufactured homes are either HUD-code manufactured homes or mobile homes. *See* TEX. OCC. CODE ANN. § 1201.003(15) (Vernon Supp. 2007).[8] A manufactured home is categorized as real property if (1) the statement of ownership and location issued pursuant to section 1201.207 of the occupations code reflects that the owner elected to treat the home as real property, and (2) a certified copy of the statement of ownership and location was filed in the real property records of the county where the home is located. TEX. PROP. CODE ANN. § 2.001(b) (Vernon 2004); *see* TEX. OCC. CODE ANN. § 1201.207 (Vernon Supp. 2007). Otherwise, a manufactured home is considered personal property. TEX. PROP. CODE ANN. § 2.001(a).

**1. Attachment of Liens in Manufactured Homes**

A lien is defined as:

> [A] security interest created by lease, conditional sales contract, deed of trust, chattel mortgage, trust receipt, reservation of title, or other security agreement if an interest other than an absolute title is sought to be held or given in a manufactured home . . . .

TEX. OCC. CODE ANN. § 1201.201 (Vernon 2004). A security interest is an interest in personal property or fixtures which secures payment or performance of an obligation. TEX. BUS. & COM. CODE ANN. § 1.201(35)(A) (Vernon Supp. 2007).[9] A security interest is perfected when it has attached and when all the applicable steps required for perfection have been taken. *Id.* § 9.308(a) (Vernon 2002). Generally, a security interest attaches when (1) the debtor authenticates a security agreement containing a description of the

---

[8] The parties do not dispute that the home is a HUD-code manufactured home. *See* TEX. OCC. CODE ANN. § 1201.003(9).

[9] The occupations code specifically provides that: "The Business & Commerce Code applies to transactions relating to manufactured housing except to the extent that it conflicts with this chapter." TEX. OCC. CODE ANN. § 1201.006 (Vernon 2004).

collateral; (2) the secured party gives value for a security interest; and (3) the debtor obtains rights in the collateral or the power to transfer rights in the collateral to a secured party. *Id.* § 9.203(b) (Vernon Supp. 2007). Moreover, the attachment of a security agreement in collateral gives the secured party the rights to proceeds from the sale of the collateral. *Id.* § 9.203(f).

### 2. Perfection of Liens in Manufactured Homes

Generally, a financing statement must be filed in the Texas Secretary of State's Office to perfect a security interest in inventory. *See id.* § 9.310(a) (Vernon Supp. 2007). Under section 9.311(d) of the business and commerce code, the filing of a financing statement is not necessary or effective to perfect a security interest in property subject to chapter 1201 of the occupations code, relating to the documents of title for manufactured homes. *Id.* § 9.311(a)(2), (d) (Vernon Supp. 2007). However, the occupations code provides, with respect to the perfection and priority of liens on manufactured homes in inventory, that:

> (a) A lien on manufactured homes in inventory is perfected by filing a security agreement with the department in a form that contains the information the director requires. Once perfected, the lien applies to the manufactured homes in inventory as well as to any proceeds from the sale of those homes.
>
> . . . .
>
> (b) Except as provided by Subsection (a), a lien on a manufactured home is perfected only by filing with the department the notice of lien on a form provided by the department. The recordation of a lien with the department is notice to all persons that the lien exists. *Except as expressly provided by Chapter 32, Tax Code, a lien recorded with the department has priority, according to the chronological order of recordation, over another lien or claim against the manufactured home.*
>
> (c) Notwithstanding any other provision of this or any other law, the filing of a lien security agreement on the inventory of a retailer does not prevent a buyer in the ordinary course of business, as defined by Section 1.201, Business & Commerce Code, from acquiring good marketable title free of

that lien, and the department may not consider that for the purpose of title issuance.

TEX. OCC. CODE ANN. § 1201.219 (Vernon Supp. 2007) (emphasis added); *see W.H.V., Inc. v. Assocs. Hous. Fin., LLC*, 43 S.W.3d 83, 90 (Tex. App.–Dallas 2001, pet. denied) (construing the Texas Manufactured Housing Standards Act codified as former article 5221f, section 19(m) of the Texas Revised Civil Statutes); *Giese v. NCNB Tex. Forney Banking Ctr.*, 881 S.W.2d 776, 780 (Tex. App.–Dallas 1994, no writ) (same).

## B. Discussion

### 1. 21st Mortgage's Security Interest in Sedona's Inventory

The record contains an inventory finance security form filed with the TDHCA on May 23, 2002. This form reflects that Vanderbilt and Sedona executed a separate security agreement dated May 2, 2001, covering Sedona's inventory.[10] Further, this form provides that:

> [t]he filing of the inventory—finance security form with the Texas Department of Housing and Community Affairs perfects the security interest in all manufactured homes which have been financed by the creditor-lender [Vanderbilt] or for which the creditor-lender advanced any funds or has incurred any obligation which enabled the retailer to acquire the manufactured home. The filing of the inventory—finance security form also perfects a security interest in all manufactured homes which are hereafter acquired by the retailer for which the creditor-lender has advanced any funds or the incurrence of the obligation, and the creditor-lender is not required to file additional inventory—finance security forms.

Despite the fact that the TDHCA noted that Vanderbilt's security interest was perfected in all of Sedona's manufactured homes, Vanderbilt filed a financing statement

---

[10] The parties do not dispute the validity of Vanderbilt's security agreement with Sedona dated May 2, 2001. Furthermore, the parties do not dispute the attachment of Vanderbilt's security interest in Sedona's inventory. The record reflects that the TDHCA, in filing Vanderbilt's inventory finance security form, determined that Vanderbilt complied with the statutory requirements for attachment. *See* TEX. BUS. & COM. CODE ANN. § 9.203(b) (Vernon Supp. 2007).

with the Texas Secretary of State on May 24, 2001.[11] The financing statement specifically covered:

> All of Dealer's [Sedona Homes, Inc. and an additional debtor, First Texas Homes] inventory, new and used and repossessed units, presently owned and hereafter acquired (including but not limited to manufactured homes, travel trailers, camper units, boats, and recreational vehicles), equipment used or intended for use in conjunction therewith, accounts, contract rights, accounts receivable, general intangibles, chattel paper covering the property described above, any such property returned to Dealer, including such property as may be after-acquired property, and any and all Proceeds thereof.

The record reflects that the home was purchased by Sedona from Redman Homes on August 31, 2001. At this time, the home would be properly characterized as inventory and was within the purview of Vanderbilt's financing statement. *See* TEX. BUS. & COM. CODE ANN. § 9.102(a)(48) (Vernon Supp. 2007) ("'Inventory' means goods, other than farm products, that: (A) are leased by a person as lessor; (B) are held by a person for sale or lease or to be furnished under a contract of service; (C) are furnished by a person under a contract of service . . . .").[12] Specifically, the home constituted "inventory . . . hereafter acquired (including but not limited to *manufactured homes* . . . .)," as described in Vanderbilt's financing statement.

Therefore, because Vanderbilt's security interest attached to Sedona's inventory and because Vanderbilt filed an inventory finance security form and a financing statement with the Texas Secretary of State, we conclude that 21st Mortgage, Vanderbilt's successor-in-interest, had a perfected security interest in Sedona's inventory. *See* TEX. OCC. CODE

---

[11] Vanderbilt's successor-in-interest, 21st Mortgage, attached a copy of Vanderbilt's financing statement covering Sedona's inventory to its motion for summary judgment.

[12] We note that the Texas Uniform Commercial Code specifically references manufactured homes in its definition of goods. *See* TEX. BUS. & COM. CODE ANN. § 9.102(44) ("'Goods' means all things that are movable when a security interest attaches. The term includes . . . (v) manufactured homes.").

11

ANN. § 1201.219. We further conclude that the home was properly considered a part of Sedona's inventory in which 21st Mortgage had a perfected security interest.

## 2. Appellant's Deed of Trust and Sedona's Statement of Ownership and Location

The record reflects that on November 6, 2002, Sedona executed a deed of trust for the benefit of appellant to secure the purchase of a piece of real property upon which the home eventually was installed. Appellant contends that the deed of trust secured the piece of real property, as well as "any buildings or improvements on the land—including the manufactured home which was demarcated on the attached survey."[13] Appellant further contends that it filed a UCC financing statement and fixture filings with the Texas Secretary of State.[14] The record reflects that appellant's deed of trust was recorded in Williamson County on November 8, 2002.

Appellant argues that when Sedona filed its statement of ownership and location with the TDHCA on July 21, 2004, it elected to declare the home as real property, which, under the occupations code and the property code, converts appellant's security interest into a purchase money security interest that has priority over 21st Mortgage's inventory

---

[13] Appellant's deed of trust with Sedona provides that: "The Property covered by this Deed of Trust includes the Land, and: (a) Any and all buildings, improvements, and tenements now or hereafter attached to or placed, erected, constructed, or developed on the Land (the "Improvements"); (b) all of the Grantor's [Sedona] right title and interest in all equipment, fixtures, furnishings, inventory, and articles of personal property . . . now or hereafter attached to or used in or about the Improvements . . . ."

[14] Appellant's UCC financing statement and fixture filing does not contain a file stamp from the Texas Secretary of State's Office indicating that the items were filed and subsequently recorded. Because appellant's financing statement does not appear to have been filed and recorded, appellees argue that appellant's security interest has not been perfected. As we have noted above, the Texas Uniform Commercial Code does not require a financing statement to be filed with respect to documents of title for manufactured homes pursuant to chapter 1201 of the occupations code. See TEX. BUS. & COM. CODE ANN. § 9.311(a)(2) (Vernon Supp. 2007). Therefore, appellees' contention that appellant's security interest was not properly perfected is unfounded.

lien.[15]  *See* Tex. Occ. Code Ann. § 1201.2055(d) (Vernon Supp. 2007) ("After the department [TDHCA] and the tax assessor-collector note in their records that a real property election has been perfected, the home is considered to be real property for all purposes."); Tex. Prop. Code Ann. § 63.003 (Vernon 2007) ("When the manufactured home converts to real property . . . the lien on the property . . . (1) is converted to a purchase money lien on real property by operation of law; and (2) exists independently of any existing lien on the real property to which the home is permanently attached."). However, Sedona failed to mention in its statement of ownership and location that 21st Mortgage had an inventory lien on the Home. *See* Tex. Occ. Code Ann. § 1201.205(6) (Vernon Supp. 2007) ("A statement of ownership and location must be evidenced by a board-approved form issued by the department setting forth . . . (6) in chronological order of recordation, the date of each lien, other than a tax lien, on the home and the name and address of each lienholder, or, if a lien is not recorded, a statement of that fact.").

We have already concluded that 21st Mortgage had a perfected security interest in the home and that it was recorded in the Williamson County real property records.  As a result, Sedona's failure to note 21st Mortgage's inventory lien in its statement of ownership and location rendered the filing defective.  *See* Tex. Occ. Code Ann. § 1201.209(1) (Vernon Supp. 2007) ("The department may not refuse to issue a statement of ownership and location and may not suspend or revoke a statement of ownership or location unless:

---

[15] We note that in its statement of ownership and location, Sedona identified itself as both the owner of record and seller of the home.  In addition, Sedona filed its statement of ownership and location on July 21, 2004, which was after the home was sold to appellant at the foreclosure sale on March 15, 2004.  The occupations code provides that "[a]n owner may elect to treat a manufactured home as real property only if the home is attached to:  (1) *real property that is owned by the owner of the home* . . ." Tex. Occ. Code Ann. § 1201.2055 (Vernon Supp. 2007) (emphasis added).  The record clearly establishes that Sedona was not the owner of the home or the underlying real property when it filed its statement of ownership and location with the TDHCA; therefore, Sedona's statement of ownership and location was defective on multiple grounds.  Furthermore, the evidence demonstrates that appellant did not file its own statement of ownership and location after Sedona's foreclosure sale when it owned the home and the underlying real property.

13

(1) the application for issuance of the statement of ownership and location contains a false or fraudulent statement, the application failed to provide information required by the director . . . ."). In effect, the director of the TDHCA was not able to consider the effect of 21st Mortgage's inventory lien on the home for the purpose of title issuance and likely issued the statement of ownership and location under the impression that the Home was unencumbered.[16]

Appellant's entire argument on appeal rests on the factual assumption that Sedona filed a proper statement of ownership and location with the TDHCA. Because we have concluded that Sedona's filing with the TDHCA was defective, we do not agree with appellant's contention that the characterization of the home—as real property—renders its lien superior to 21st Mortgage's. We do not, however, have the benefit of ample case law to guide us in this matter. Relying on a previous version of the Texas Manufactured Housing Standards Act (the "Act") now codified in chapter 12 of the occupations code, the Dallas Court of Appeals noted that "[p]ermanent attachment to real estate does not affect the validity of a lien recorded or registered with the department *before* the manufactured home is permanently attached. *The rights of a prior lienholder pursuant to a security agreement or the provisions of a credit transaction and the rights of the state pursuant to*

---

[16] The occupations code provides that "a document of title is considered to be a statement of ownership and location and it may be exchanged for a statement of ownership and location . . . ." *See* TEX. OCC. CODE ANN. § 1201.201(2) (Vernon 2004), § 1201.214(a) (Vernon Supp. 2007). Essentially, Sedona's failure to denote liens on the manufactured home clouded the title for the home. Furthermore, the occupations code provides that the "department may not issue a statement of ownership and location for a manufactured home that is being converted from personal property to real property until: (1) each lien on the home is released by the lienholder; or (2) each lienholder gives written consent, to be placed on file with the department." *Id.* § 1201.2075 (Vernon Supp. 2007). The legislature did provide two exceptions to this rule which allowed for a statement of ownership and location to be filed prior to the release of any liens or the consent of any lienholders only if the department releases a certified copy of the statement to: "(1) a licensed title insurance company that has issued a title insurance policy covering all prior liens on the home; or (2) a federally insured financial institution or licensed attorney who has obtained from a licensed title insurance company a title insurance policy covering all prior liens on the home." *Id.* The record does not contain evidence that 21st Mortgage released its lien on the home or that it gave written consent to be placed on file with the department, nor does it reflect that either of the two exceptions previously mentioned were satisfied.

*a tax lien are preserved.*" *W.H.V., Inc.*, 43 S.W.3d at 91 (emphasis in original). Therefore, it does not follow that appellant can avoid 21st Mortgage's inventory lien simply by having Sedona file a defective statement of ownership and location and by conducting a foreclosure sale.

Appellant also asserts that 21st Mortgage would be, at best, entitled to the "proceeds of the purchase-money loan made by Plaintiff [appellant] to Sedona Homes." Appellant relies on section 1201.204(b) of the occupations code which provides the following:

> (b) At the first retail sale of a manufactured home, a manufacturer's certificate automatically converts to a document that does not evidence any ownership interest in the manufactured home described in the document. A security interest in inventory evidenced by a properly recorded inventory finance lien automatically converts to a security interest in proceeds and cash proceeds.

TEX. OCC. CODE ANN. § 1201.204(b) (Vernon 2004). The automatic conversion of a security interest in inventory to a security interest in proceeds hinges entirely upon the first retail sale of a manufactured home. *See id.* The first retail sale of a manufactured home refers to "a consumer's initial acquisition of a new manufactured home from a retailer by purchase, exchange, or lease-purchase. The term includes a bargain, sale, transfer, or delivery of a manufactured home for which the director has not previously issued a statement of ownership and location, with intent to pass an interest in the home, other than a lien." *Id.* § 1201.201. The record does not reflect that the home was subject to a "first retail sale." The evidence fails to demonstrate that Sedona, either explicitly or implicitly, expressed a desire to sell or transfer an interest in the Home to appellant other than a lien. *See id.* To the contrary, appellant argues that 21st Mortgage's own inventory reports reflect that "unit [the Home] sold we have info," which constituted a "first retail sale." This

is not enough. *See id.* The inventory records do not provide information as to the sales price, the buyer, or the date of sale.[17] Therefore, we conclude that 21st Mortgage's security interest did not automatically convert to a security interest in the proceeds of appellant's "purchase-money loan with Sedona Homes."

**3. Conflicting Inventory Liens & Section 1201.219 of the Occupations Code**

Generally, a perfected PMSI in goods other than inventory or livestock has priority over a conflicting security interest in the same goods. *See* TEX. BUS. & COM. CODE ANN. § 9.324(a) (Vernon 2004). A PMSI in inventory has priority over a conflicting security interest in the same inventory if the PMSI is perfected by filing or if the PMSI is temporarily perfected without filing or possession before the beginning of the twenty-day period prescribed in section 9.312(f) of the business and commerce code. *See id.* § 9.324(b), (c); §9.312(f) (Vernon Supp. 2007). However, the Act does not refer to the priority of conflicting PMSIs. In fact, the Act provides that a lien on the inventory of manufactured homes has priority "according to the chronological date of recordation." TEX. OCC. CODE ANN. § 1201.219. Therefore, for manufactured homes in particular, the legislature has specified that conflicting liens on the same inventory must be resolved according to the chronological date of recordation. *See id.*[18] It is clear from our review of the record that

---

[17] The inventory records to which appellant refers contains information about the status of Vanderbilt's inventory from March 2003 to November 2003.

[18] The legislature provided one exception to the manufactured home priority rules for buyers in the ordinary course of business. *See id.* § 1201.219(c). A buyer in ordinary course of business "means a person that buys goods in good faith without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person, other than a pawnbroker, in the business of selling goods of that kind. . . . A buyer in ordinary course of business may buy for cash, by exchange of other property, or on secured or unsecured credit, and may acquire goods or documents of title under a preexisting contract for sale. Only a buyer that takes possession of the goods or has a right to recover the goods from the seller under Chapter 2 may be a buyer in ordinary course of business." TEX. BUS. & COM. CODE ANN. § 1.201(9). However, 21st Mortgage's filing of its financing statement constituted constructive notice of its inventory lien. *See Marine Drilling Co. v. Hobbs Trailers, A Div. of Fruehauf Corp.*, 697 S.W.2d 831, 833-34 (Tex. App.–Corpus Christi 1985, writ ref'd n.r.e.). Therefore, because appellant was on constructive notice of 21st

16

21st Mortgage's security interest in the home was perfected prior to appellant's security interest and that appellant was not a buyer in the ordinary course of business. In applying section 1201.219 of the Texas Occupations Code, we conclude that 21st Mortgage's inventory lien had priority over appellant's security interest. *See id.*

### 4. The Foreclosure Sale & 21st Mortgage's Security Interest

The Texas Uniform Commercial Code provides that when a lienholder forecloses upon its lien, any subordinate liens or security interests are discharged. *See* TEX. BUS. & COM. CODE ANN. § 9.617(a)(3) (Vernon 2002); *see also Conseco Fin. Servicing Corp. v. J & J Mobile Homes, Inc.*, 120 S.W.3d 878, 883 (Tex. App.–Fort Worth 2003, pet. denied); *Mortgage & Trust, Inc. v. Bonner & Co.*, 572 S.W.2d 344, 352 (Tex. Civ. App.–Corpus Christi 1978, writ ref'd n.r.e). After a foreclosure sale, any senior encumbrances remain valid and enforceable against the property. *See Conseco Fin. Servicing Corp.*, 120 S.W.3d at 883; *Mortgage & Trust, Inc.*, 572 S.W.2d at 352; *see also Summers v. Consol. Capital Special Trust*, No. C-6817, 1990 Tex. LEXIS 38, at *8 (Tex. Feb. 28, 1990) (Mauzy, J., dissenting).

In the instant case, appellant commenced the foreclosure sale on March 3, 2004, upon Sedona's default. Because we have already determined that 21st Mortgage's security interest had priority over appellant's security interest, we conclude that 21st Mortgage's security interest continued to encumber the home even after the foreclosure sale. Accordingly, we overrule appellant's first and second issues.

---

Mortgage's inventory lien and it apparently failed to conduct a file search with the Texas Secretary of State's Office of security interests associated with the home, appellant would not be a buyer in the ordinary course of business, as it has not purchased the home in good faith without knowledge of 21st Mortgage's inventory lien. *See id.*; *see also* TEX. BUS. & COM. CODE ANN. § 1.201(9). Therefore, the lone exception contained in section 1201.219 of the occupations code does not apply to the instant case. *See* TEX. OCC. CODE ANN. § 1201.219.

### 5. "Self-Help Repossession"

In its third issue, appellant complains that the trial court erred in granting appellees' no-evidence motions for summary judgment and contends that it produced probative evidence for its causes of action for trespass, trespass to try title, conversion, and declaratory judgment. Specifically, appellant contends that appellees were required to provide notice to it prior to repossessing the home and, in failing to do so, committed a trespass. Conversely, appellees assert that because 21st Mortgage's security interest had priority over appellant's security interest, appellant's causes of action for trespass to try title, conversion, and declaratory judgment fail. In addition, appellees argue that because they were able to easily repossess the home, the home was not affixed to real property and no notice was required.

Unless otherwise agreed upon, a secured party may take possession of the collateral covered by its security agreement without judicial process ("self-help repossession") if it proceeds without breaching of the peace. *See* TEX. BUS. & COM. CODE ANN. § 9.609 (Vernon 2004); *see also Guillory v. Banctexas Westheimer*, No. 01-89-00609-CV, 1990 Tex. App. LEXIS 1458, at **4-5 (Tex. App.–Houston [1st Dist.] June 14, 1990, writ denied) (citing *Ford Motor Credit Co. v. Cole*, 503 S.W.2d 853, 855 (Tex. Civ. App.–Fort Worth 1973, writ dism'd); *Pioneer Fin. & Thrift Corp. v. Adams*, 426 S.W.2d 317, 319-20 (Tex. Civ. App.–Eastland 1968, writ ref'd n.r.e.)).

In the instant case, 21st Mortgage repossessed the home after Sedona defaulted and Nella subsequently sold the home. *See* TEX. FIN. CODE ANN. § 347.355(a) (Vernon 2006) ("If a consumer is in default, the creditor who possesses the first recorded perfected security interest may repossess the manufactured home."). The record does not contain any evidence that appellees breached the peace in repossessing the home.

Appellant, however, contends that even if 21st Mortgage's security interest had priority, 21st Mortgage was required to provide notice to it prior to repossessing the home because the home was "affixed to real property." *See id.* § 347.355(b). Appellant's argue that the term "affix" is synonymous with "installation."[19] On the other hand, appellees contend that the home could not have been affixed to real property because of the ease in which they were able to repossess the home. Appellees' argument appears to give rise to the notion that appellant failed to make efforts to permanently secure the home.

The occupations code provides that "installation" means "the temporary or permanent construction of the foundation system and the placement of a manufactured home or manufactured component on the foundation. The term includes supporting, blocking, leveling, securing, anchoring, and properly connecting multiple or expandable sections or components and making minor adjustments." TEX. OCC. CODE ANN. § 1201.003(10).

In reviewing the record, appellant has not provided this Court with evidence indicating that the home was permanently affixed to real property where the home was repossessed. We are persuaded by the fact that appellees were able to repossess the home with relative ease. In fact, if the home had been "affixed to real property," it would have been extremely difficult for appellees to repossess the home, and they would have almost certainly breached the peace in doing so. As such, we conclude that the home was

---

[19] Neither party disputes that Sedona had "installed" the home in Williamson County on September 6, 2002. However, the term "installation," as provided in the occupations code, does provide for the construction of a foundation system and placement of a manufactured home on the foundation for a temporary basis. *See* TEX. OCC. CODE ANN. § 1201.003(10). Temporary placement of a manufactured home can hardly be construed to be affixed or fastened permanently. *See id.*; *see also* TEX. FIN. CODE ANN. § 347.355(b) (Vernon 2006); BLACK'S LAW DICTIONARY 46 (7th ed. 2000) (defining "affix" as "to attach, add to, fasten on permanently."). We are not inclined to say that the term "affix" in section 347.355 of the finance code means the same thing as "installation" in section 1201.003 of the occupations code.

not "affixed to real property." Therefore, appellant was not entitled to notice pursuant to the finance code, and the trial court did not err in granting appellees' no-evidence motions for summary judgment. Moreover, because we determined that 21st Mortgage had a valid, perfected security interest that remained after the foreclosure sale, we conclude that 21st Mortgage was entitled to "self-help repossession" of the home. Accordingly, we overrule appellant's third issue.

## IV. CONCLUSION

Having overruled all of appellant's issues on appeal, we affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 10th day of April, 2008.

_____